## RANLET *v.* COOK.

Where there are different owners of rights in the same water-power or privilege, and the existence of the right of each has been established at law, or is admitted, but the owners disagree as to the extent of the several rights in the common property, a court of equity will interfere to regulate the use, and to define and limit the respective rights of the several owners.

A provision in a lease of a water-power or privilege for ten years, that the lease shall on certain terms be renewed for an additional term of ten years, is equivalent to a provision that the lease shall be extended for the additional term upon the same conditions.

Such a lease for ten years, containing a provision that on certain conditions it shall be renewed for a further term of ten years, is a good lease for twenty years, if the tenant complies with the conditions specified.

In Equity. The bill alleges that the plaintiff was, and for a long time had been, possessed of a certain mill-privilege on Perley canal (so called), in Laconia, on the Winnipiseogee river; that he holds said privilege by virtue of a certain indenture, dated September 5, 1848, made between the Winnipiseogee Lake Cotton and Woolen Manufacturing Company and the plaintiff, wherein said company demised and leased unto the plaintiff the right to draw water from the lower end of said canal, for the use of two wheels of the kind invented by Alvah Tucker, and of four feet diameter, to have and to hold, &c., for the term of ten years, at a yearly rent of one hundred dollars, payable, &c.; that in said indenture said company covenanted with the plaintiff that they would, at the end of said ten years, renew the said lease for a further term of ten years, the rent for said last ten years to be one hundred and twenty-five dollars annually, and that the said indenture has been renewed accordingly;

That the plaintiff, in the years 1848 and 1849, erected, at the lower end of said canal, a large car manufactory, consisting of three large buildings, flumes, gates, wheels and other works, fitted and designed to operate in the same, and containing a large quantity of valuable machinery, which is operated mainly by two wheels of the kind and dimensions stated in the indenture, which are carried by water from said canal.

The bill then alleges the amount of business the plaintiff was doing, the number of hands he employed, and the amount of work he had contracted to do; and, that in order to accomplish it, it was necessary that said wheels should be run at full speed and strength; that for the use of said wheels the water in said canal should be of the height of three and a half feet opposite the flume of the defendants, and when drawn below said height, the plaintiff's said wheels can not be run at full speed and strength, and that the plaintiff has the right to have the water in said canal up to that height; that the defendants occupy certain factories in said Perley canal, demised and leased to them by said Lake Company, above the plaintiff's said manufactory, and are permitted to draw, for the purpose of operating their factories, the surplus water from said canal, over and above what is necessary for the use of the plaintiff's said wheels and no more; that a controversy having arisen between the parties in relation to the use of the water in said canal, J. B. French, the agent of said company, was called upon, and had settled, fixed and determined, by means of certain monuments upon the sides of said canal, near the flumes of said defendants, the line below which the defendants should not draw the water from said canal, without the consent of the plaintiff; and that the water, when up to those monuments, stands three and a half feet deep in said canal; that the plaintiff has never underlet or disposed of his said right, and has never given permission to any one to draw the water in said canal below said height of three and a half feet; yet that the defendants have at various times since the first day of September, 1859, entered and drawn and diverted the water from said canal so as to reduce its height in said canal much below the said three and a half feet, whereby the plaintiff has been greatly damaged, &c. (setting forth the particulars of his injury), that the defendants threaten to continue so to use the water, and are irresponsible. The plaintiff prays an answer, an injunction, and further relief.

The bill is taken *pro confesso,* as to two of the defendants, Hawkins and Goss. Cook has filed an answer, and the controversy is now between the plaintiff and him alone.

Cook's answer admits the lease to the plaintiff, but denies that there has ever been any want of water-power at his mill; denies the amount of business done and the number of hands employed; that his wheels need to run at full strength and speed, or that the water needs to be three and one half feet deep in the canal for the use of said wheels, but alleges that two feet of water in the canal is sufficient for their use; denies that his right to draw water from said canal is limited to the surplus after the plaintiff's wheels are supplied, but claims an equal right at all times to draw water from said canal; denies that said French ever fixed or determined any point below which the defendant should not draw the water; alleges that the defendant is responsible for any and all damages that the plaintiff has suffered or might suffer; admits that he has often drawn the water much below said height of three and one half feet in the canal, but denies that the plaintiff has ever been injured

thereby, and sets up a title under a lease from said Lake Company to one Jewell, prior to the date of said plaintiff's lease, which privilege, so leased to said Jewell, said defendant now claims to hold, and that he has thereby a prior right to that of the plaintiff to draw water for one wheel from said canal.

The cause was submitted upon the bill, answer and proofs.

*W. N. Blair*, for the plaintiff, cited and commented on Angell on Watercourses 5, 148, 173, 184, 185, 285 ; *Bullen* v. *Runnels*, 2 N. H. 255 ; *Lunt* v. *Holland*, 14 Mass. 149 ; 2 Black. Com. 18, 19 ; Broom's Leg. Max. 263, 458, 533 ; *Busby* v. *Littlefield*, 31 N. H. 193 ; *Dewey* v. *Williams*, 40 N. H. 222 ; *Cochecho Manf. Co.* v. *Whittier*, 10 N. H. 311 ; *Bardwell* v. *Ames*, 22 Pick. 333 ; *Wentworth* v. *Poor*, 38 Me. 243 ; *Corning* v. *Pinkham*, 1 N. H. 355.

*E. A. Hibbard*, for the defendant, cited and commented on *Coe* v. *Lake Co.*, 37 N. H. 254, to show that the plaintiff could not have an injunction, and commented at length upon the testimony.

SARGENT, J. The evidence shows that both parties derived their title by lease from the Lake Company, and both leases are similar ; one giving to the plaintiff the right to draw water for two wheels of a certain description, and the other giving to the defendant the right to draw water for one wheel, and neither lease is in terms made subject to the other. The plaintiff claims the right first to draw water for his two wheels, and that, when the water is low, he is entitled to his supply first ; while the defendant claims that he is entitled to an equal share, and an equal right to draw water for his wheel at any and all times ; that the plaintiff has no priority over him in the use of the water.

We will first dispose of certain questions raised by the pleadings, which might bear more or less directly upon the main question, not connected with the original title of either party. The parties have had controversy about their rights, and the plaintiff, in his bill, alleges that this controversy had been submitted to Mr. French, the present agent of the Lake Company, and that the same was settled by him. But the evidence shows that the settlement extended only to the rights of Hawkins and Goss. It appears that French did fix a monument in the canal below which they were not to draw the water. But so far as the controversy between the plaintiff and Cook was concerned, it appears that there was no submission to French of the matters in dispute and that no adjustment was made or attempted by him.

The plaintiff alleges in the bill that Cook is irresponsible ; but that is denied in the answer, and the proof shows that he is a man of sufficient means to respond in this case to any amount which the plaintiff may recover against him. Nor does it here become material to allude to the charges made by the plaintiff that he has sustained great losses upon certain specific contracts by the interference of the defendant. The evidence fails to support those charges fully.

The main question is as to the right of priority in the use of the water.

The defendant contends that this bill should be dismissed because the plaintiff has never established his right at law. But it is well settled in New-York and in Massachusetts that where there are different owners of rights in the same water-power or privilege, and the existence of the right has been established at law, or is admitted, but the owners disagree as to the extent of their rights, or their use of the common property, a court of equity will interfere to regulate the use and to define and limit the rights of the several owners. We have held the same to be good law in this State. *Burnham* v. *Kempton,* 44 N. H. 78, and authorities there cited. It is necessary in such cases that equity should exercise her jurisdiction in order to prevent a multiplicity of suits.

In the case before us the rights of the parties are not in dispute to draw water from the Perley canal, — the plaintiff for two wheels and the defendant for one wheel, — when there is water enough for both. But when the water is low has the plaintiff a prior right to its use? or is the defendant at all times entitled to draw the water to his wheel whenever the plaintiff may to his?

It appears that prior to 1848 there had been on the Perley canal in Laconia three mills and privileges; those occupied by these three defendants at the filing of this bill, January 10, 1860. During the year 1848, or about that time, the canal was deepened, and made wider, and its capacity greatly enlarged. A new privilege was thus created and leased to the plaintiff at the lower end of said canal, where he erected an extensive car manufactory, which went into immediate operation, where there had been no mill before, while the three old mills continued their operations as formerly, — Cook's being the lowest on the canal, next to the plaintiff's, and the other two above.

In regard to the Hawkins and Goss mills no question is raised. The priority of the plaintiff's right over these is admitted. The first lease that is put in evidence of the Goss mill was from the Lake Company to one Whicher, dated January 1, 1850, conveying a certain mill on the Perley canal, "with water as used in connection therewith." The first lease of the Hawkins mill that is offered is from the Lake Company to said Hawkins, dated January 1, 1858, and conveying certain land, with the buildings thereon, situated on said canal, and the water-power connected therewith; but it is expressly stipulated that this right to draw water "shall be subject to the right of Ranlet to draw water first." And the evidence shows that before these leases were made these two privileges had been occupied by tenants under verbal leases, and that it was well understood by these tenants, and by Mr. Bell, the former agent, and by Mr. French, the present agent, that these mills were to draw water from said canal, only subject to Ranlet's right to draw first.

The plaintiff holds under a lease from the Lake Company to himself, dated September 5, 1848, and conveying certain land upon the canal, "with the right to draw water from the lower end of the

Perley canal for the use of two wheels," of a certain size and description; and it appears that the plaintiff's wheels are of the required size and description. Said lease was to run ten years, at a specified yearly rent, and the company agreed, at the expiration of that time, upon certain conditions, to renew said lease for a further term of ten years at an increased annual rent. The first ten years expired September 5, 1858, and the lease has never been formally renewed; but it appears that all the conditions to be performed by the plaintiff have been performed, and that the company have received the increased annual rent since the first ten years expired. This continued occupancy by the tenant and the reception of the rent by the company since the first ten years expired, is all the renewal of the lease that is shown.

The first lease of the Cook mill and privilege, which has been put in evidence, was from the Lake Company to Benjamin Jewell, dated July 7, 1847, conveying land on the canal and "water from the canal to run the wheels now put in by said Jewell"; and the evidence shows what wheels Jewell had thus put in. This lease was to run seven years, and was to be renewed on certain conditions at the expiration of said term for five years longer. On the back of this lease was the following: "The within mentioned company having agreed, with the consent of the within named Benjamin Jewell and Nathan T. Fogg, assignee of part of the interest in said lease, to let the within mentioned premises to James W. Durgin, we, the said Jewell and Fogg, do hereby agree with said company to surrender and cancel the said lease on the first day of August next." Dated July 14, 1849.

And the next day, July 15, 1849, said Lake Company leased to said Durgin the same land and mill, "and the right to take water from the Perley canal for a wheel;" and it appeared in evidence that Durgin had before that put in a new wheel, which would do all the work of Jewell's two wheels, and use about the same quantity of water. This lease was to run eight years from the first day of August, 1849, and was to be renewed on certain conditions for five years longer. Said Durgin died in 1855, and Mary F. Durgin, his administratrix, assigned all said Durgin's right in the lease to Wm. Merrill, March 17, 1856, and the said Merrill assigned the same to Cook, the defendant, August 1, 1858. This lease has only been renewed by a continued occupancy of the tenant and the reception of the rent from year to year, as in case of the plaintiff's lease.

January 1, 1860, — ten days before the filing of this bill, — the Lake Company leased to Cook the land on the Perley canal and the mills, and all the water-power passing through said canal, except so much as is now leased to said Ranlet; "and it is understood that this lease is intended to grant only such rights to the water of said canal as remain in said company after the rights granted to said Ranlet, without defining what those rights are, as there were one or more wheels running on said canal prior to the lease to said Ranlet; and the company do not admit that there is any priority of right in said Ranlet, but leave Cook and Ranlet to settle their rights themselves, — to hold from the first day of January, 1861, to the

expiration of said Ranlet's lease, on the fifth day of September, 1868." It is also provided that said Cook may hold or extend this lease eight years longer; and it is agreed that if the lease be extended, said Cook is to have one half of all the water-power in said canal; the company reserving the other half to themselves, to be used at said Ranlet's shop, or elsewhere, as they may elect. This lease covers all the land and water-power heretofore used and occupied by all three of the defendants.

Whatever the understanding may have been between the parties as to the effect or construction of these leases, still we can only give them such a construction as their terms will warrant. The earliest lease in point of time was to Jewell, but that lease was given up to the company two years after its date, upon an agreement of the company to lease the same right to Durgin which they did on terms; but in the meantime they had given Ranlet a lease of water enough to run two wheels, and that lease must take priority in law of the one given subsequently to Durgin, and which has been assigned to Cook.

This lease to the plaintiff was given for ten years, which would extend to 1858, with a provision that it should be renewed for ten years longer, upon certain terms, which is equivalent to extending the lease for that time. Now a lease for ten years, with such an agreement that it should be renewed or extended for ten years longer, is a sufficient lease for twenty years, according to the doctrine of *Hall* v. *Spaulding*, 42 N. H. 259, where it is held that a stipulation in a lease of a portion of certain premises, that in a certain event the tenant shall be entitled to a lease of the residue, will not be construed to require the execution of a new lease for such residue. Here each party was in possession of the premises leased to him, when the lease was given to the other party. This was a sufficient notice of the title and claim made by each to the other, and each had only to inquire of the party giving the lease, to ascertain the terms of the lease to the other. Had the lease to Jewell continued, that would have had the priority of right, but when that was given up and canceled, and a new lease given to Durgin subsequent to that given to the plaintiff, the rights of Durgin must of course be subject to those which the plaintiff had previously acquired, which rights the plaintiff will hold under his lease till 1868.

We therefore hold that the plaintiff is entitled to the priority in the use of the water in the Perley canal which he claims, and that when there is not water enough for both, the defendants are entitled only to the surplus, after the plaintiff has drawn his supply. It is not clear, upon the evidence, how high the water is required to be in the canal to give the plaintiff the necessary quantity. Perhaps the parties can agree upon that point. If so, the defendants will be enjoined from drawing the water below that point; or, if they do not so agree, the court will send a competent board of commissioners to establish, by some fixed monument, the height in the canal below which the defendants will be enjoined from drawing the water.

A decree will be entered that the plaintiff is entitled to a priority

in the use of so much water from said Perley canal as is sufficient to carry his two wheels; and when that amount is fixed and determined by agreement or by the court, the defendants will be enjoined from interfering with that right during the continuance of the plaintiff's lease, whenever the plaintiff is using his wheels.