RUTLEDGE & TAYLOR COAL COMPANY, a Corporation, Appellant, v. MERMOD, JACCARD & KING JEWELRY COMPANY, a Corporation, Respondent.

St. Louis Court of Appeals. Opinion Filed January 3, 1922.

1. **CONTRACTS: Option to Renew or Extend: No Practical Distinction.** There is no practical distinction between the words "renew" and "extend" in determining the time when an option given in the renewal clause of a contract must be exercised.

2. ———: **Construction: Optional in Respect to One Party: Strictly Construed in Favor of the Party Bound.** Contracts which are optional in respect to one party are strictly construed in favor of the party that is bound and against the party in whose favor the option runs.

3. ———: **Options: Notice of Exercise: Must be Given Before Termination of Contracts.** Where a contract provides for its renewal at the election of one party thereto without fixing the time when such option shall be exercised, the time for giving notice of such renewal cannot be extended beyond the date of the expiration of the contract.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Benj. J. Klene,* Judge.

REVERSED AND REMANDED (*with directions.*)

*Marion C. Early* for appellant.

(1) When a contract creating a relation between the parties thereto, terminating at a fixed time, contains a provision giving one of the parties an option to renew the relation for a further period, such option expires with the time fixed by the contract for that relation in the first instance and cannot be exercised thereafter. (2) This foregoing applies when the contract is for current sales or services terminating at a fixed time,

with option for renewal, which is the precise case under discussion. Monmouth Electric v. Gas. Co., 83 N. J. L. 531; San Pedro Salt Co. v. Hauser Packing Co., 13 Cal. App. 1; Helena Light Co. v. Northern Pacific, 186 Pac. 702. (3) The same rule holds good for options for renewal in leases, being merely a special application of the general principle, stated under 1 above, and therefore authority for 2 above. Renaud v. Daskm, 35 Conn. 312; Thiebaud v. First Natl. Bk., 42 Ind. 212; Jones on Landlord & Tenant, par. 339; Shamp v. White, 106 Cal. 220; Robertson v. Drew, 116 Pa. 638; Leavitt v. Mykell, 203 Mass. 506; Samuelson v. Palmer, 96 Kan. 587; Insurance Co. v. National Bank, 5 Mo. App. 333, 71 Mo. 58. (4) Similarly a tenant's option to purchase the fee cannot be exercised after expiration of the lease in which that option is given. Magoffin v. Holt, 62 Ky. (1 Duvall) 95; Tilton v. Sterling Coal Co., 28 Utah, 173; Cates v. McNeil, 169 Cal. 697. (5) The word "renewal" has no technical meaning; and when an option for renewal is given in a contract creating a current relation between the parties thereto, it is indistinguishable from an option for extension so far as time of exercising the option is concerned. Insurance Co. v. National Bank, 71 Mo. 58; Blanchon v. Kellerstrass, 200 Mo. App. 610; Medicus v. Altman, 199 Mo. App. 466; Helena Light Co. v. Northern Pacific, 186 Pac. 702. (6) Options are construed in favor of the party that is bound and against the party having the option. Kolachny v. Galbreath, 26 Okl. 772; Harding v. Gibbs, 125 Ill. 85; Frye on Specific Peformance, par. 733; Stembridge v. Stembridge, 87 Ky. 91; Mitchell v. Probst, 152 Pac. 597. As a matter of fact, excessive damages were allowed. It was proved that respondent could have bought the coal at much lower figures than it actually did.

*McLaran & Garesche* and *E. H. Wayman* for Respondent.

(1) The option given to the respondent in this case was to renew its contract with the appellant. (2)

The word "renew" or "renewing" has a common and definite meaning, as "to recommence;" to repeat; to re-establish, revive or to give a new existence to that which has expired by forfeiture or lapse of time. Moers v. City of Reading, 21 Pa. St. 201; Commonwealth v. Bartilson, 85 Pa. St. 487; Sponhaur v. Malloy, 21 Ind. App. 292; Kedey v. Petty, 153 Ind. 184; Tannenbaum v. Bloomingdale, 58 N. Y. Sup. 235-237; Century Dictionary. (3) The respondent, according to the common acceptation of the word "renew," could not renew its contract with appellant until the contract had expired, and, hence, it was not required to exercise its option to renew until the contract was susceptible of renewal. (4) Where an option is silent as to the time within which it must be exercised, the party to whom the option is given is entitled to a reasonable time within which to exercise it. (5) The contract in this case was written by the appellant, and will be construed against it. Belch v. Schott, 171 Mo. App. 357. (6) Respondent was not required to accept the proposal made by appellant to furnish coal after the contract expired, inasmuch as such proposal was a conditional one and was not a proposal to furnish coal at all events save those specifically mentioned in the contract.

BRUERE, C.—The plaintiff (appellant) instituted this action to recover the sum of six hundred and thirty-eight dollars and twenty five cents, being the contract price of coal delivered by it to defendant during the month of March, 1917, under a written contract between the parties.

The defendant filed a counterclaim, in which it prayed judgment against the plaintiff for seventy-seven hundred and eighteen dollars and fifty-seven cents, being the alleged damages sustained by it and arising out of plaintiffs refusal to renew its said contract.

Plaintiff's claim was not contested and the circuit court, sitting as a jury, allowed said claim in full. The

issue on defendant's counterclaim was resolved in favor of the defendant and judgment was entered in its favor for the sum of sixty-four hundred and forty-three dollars and eighty-seven cents, said sum being the difference between the amount found in favor of the defendant on its counterclaim and the amount found in favor of plaintiff on its cause of action. After an unavailing motion for a new trial plaintiff appealed the cause to this court.

On the 31st day of March, 1916, the plaintiff contracted in writing to sell the defendant, during the period beginning April 1, 1916, and ending March 31, 1917, such quantities of coal as defendant required at its building in the City of St. Louis, at prices fixed by the contract. The contract contained the following provision:

"The party of the second part also has the privilege of renewing contract for another year under same terms and conditions."

The contract is silent as to the time when the right to renew should be exercised. It is admitted that defendant did not elect to renew the contract prior to its expiration. Nothing was said or done by either party, prior to the expiration of the contract, that related in any way to the renewal of the contract. But on April 2, 1917, the defendant addressed the following letter to the plaintiff:

"We hereby desire to notify you that we wish to exercise the privilege of renewal for one year the contract signed March 31, 1916, for the delivery of coal at our building as per said contract, and that we are ready to sign the succeeding contract at any time same may be presented.

Yours very truly,

MERMOD, JACCARD & KING JEWELRY Co.,

(Signed) Per J. C. ESTES."

On April 4, 1917, the plaintiff replied to said letter as follows:

"Your favor of the 2nd received expressing your desire to renew contract we had with you last year on Security nut coal for requirements of your building at Broadway and Locust Sts., estimated at 12 tons per day.

"Beg to inform you that it was necessary for you to have expressed this desire prior to March 31st, which was the expiration date of your contract. It would have been impossible for us to have renewed on April 2nd a contract that had expired March 31st, as on the date of your letter (April 2nd), no contract was in effect.

"If you will be interested in making a new contract for your requirements of Security nut, we will be glad to discuss the matter with you, and while we have contracted a very large portion of our tonnage, especially during the period prior to September 1, 1917, we will endeavor to find some way, if possible, to make you a quotation provided car supply at our Security mine will be in excess of three days per week.

"Thanking you for past favors and awaiting to hear from you, we are,

Yours truly,
J. W. SEXTRO, Vice-President."

On May 2, 1917, the defendant wrote and the plaintiff duly received the following letter:

"We are in receipt of your favor of the 4th ult. in reference to the renewal of the contract to supply our building with coal for the year ending March 31, 1918, and in reply would say that we cannot accept your refusal to carry out this contract as final.

"We really believe that as we notified you within a reasonable time that we wished to renew the contract as specified, that we are within our rights, and that you are obligated to furnish the coal at prices quoted.

"We are now buying coal wherever we can get it at the best possible prices, and will keep account of the amount purchased, and the difference between the price we have to pay, and the price at which you agreed to

furnish it, and we will expect you to reimburse us to this extent.

"We, of course, would prefer that you furnish us with the coal as specified in the contract of April 1st 1916, and we feel sure that you can furnish it as a great deal less price than we must pay for it, and we ask you to reconsider your refusal to furnish the coal.

Yours very truly,

MERMOD, JACCARD & KING JEWELRY CO.

(Signed)   Per J. C. ESTES."

Defendant received no reply to the letter of May 2, 1917.

The above was all the evidence introduced relating to a renewal of said contract. Defendant did not obtain any coal from plaintiff after March 31, 1917, but purchased such coal as it required at its said building, for the period of one year after March 31, 1917, in the open market, at prices in excess of the said contract price. The difference in price thus paid was the amount of damages claimed in its counterclaim.

The sole question raised by this appeal is, whether or not the defendant was required to exercise its option to renew within the life of the contract.

Appellant contends that the option to renew could not be exercised after the expiration of the original contract. The lower court tried the case on the theory that the defendant had a reasonable time after the expiration of the contract within which to exercise its option; and respondent contends for that theory here.

Counsel for respondent, in support of their contention, lay great stress on the fact that the clause in question speaks of a *renewal* of the contract; not of an *extension*. They contend that in construing said clause, a distinction should be made between the words *renew* and *extend*; that while an option to *extend* a contract must be exercised during the life of a contract, a privilege to *renew* can be exercised after the contract is at an end.

In determining when the option, given in the renewal clause of the contract, must be exercised we can-

not recognize any practical distinction between the words renew and extend. Our Supreme Court in cases involving options for renewal in leases have adherred to the view, that there is no practical difference between the privilege of a .renewal and an extension, so far as time of exercising the option is concerned. [Insurance and Law Building Company v. National Bank of the State of Missouri, 5 Mo. App. 335; Blanchon and Bartholomees v. Kellerstrass Distilling Corporation, 200 Mo. App. 613, 208 S. W. 484; The Insurance and Law Building Company v. The National Bank of Missouri, 71 Mo. 58; Medicus v. Altman, 199 Mo. App. 469, 203 S. W. 637; Howell v. City of Hamburg, 165 Cal. 172, 177; Ranlet v. Cook, 44 N. H. 512.]

Respondent further urges, that as the contract is silent as to the time when the right to renew may be exercised, it had a reasonable time after the expiration of the contract within which to exercise its option.

The clause under consideraion must be strictly construed in favor of the appellant and against the respondent. We have here a contract that is unilateral; the defendant being bound to do nothing except at his option. It is a well-recognized rule of law that "contracts which are optional in respect to one party are strictly construed in favor of the party that is bound and against the party in whose favor the option runs." [2 Elliott on Contracts, p. 833, sec. 1548; Williston on Contracts, sec. 620; Kolachny v. Galbreath, 26 Okla. 779, 110 Pac. 902; Frank Oil Co. v. Belleview Gas & Oil Co. et al., 29 Okla. 732, 119 Pac. 260; Harding v. Gibbs, 125 Ill. 85.]

The contract in question was for a definite term which required a notice to renew if said contract was to continue after said term. This notice is required for the protection of the party bound. In mercantile transactions, where the character of the property involved is such that it is liable to sudden fluctuations in value, and where an option to renew the contract is given without fixing the time when such option shall be exercised, it is

most essential to the protection of the party bound, if the privilege of renewal be exercised, that the party not bound be required to give the notice to renew before the expiration of the contract.

In the case at bar the plaintiff would be seriously embarrassed in his business if the defendant, as respondent contends, had the right to keep him in the dark as to the exact time when the privilege to renew the contract expired. If the right to exercise the option existed during a reasonable time after the expiration of the original contract, as contended for by respondent, then plaintiff could not dispose of the coal, stipulated in the contract, to some one else during said reasonable time. Not knowing the date when the optional agreement expired he would be unable to adjust his business to the condition arising from a lapse or renewal of the contract as the case might be.

Nor could the plaintiff, if defendant's position is correct, protect himself by demanding, within that reasonable time after the expiration of the original contract, that the defendant make his election under the renewal clause, for the defendant could refuse to make an election and keep him in the dark with the excuse that he had not yet made up his mind.

Again if defendant, without exercising its rights to renew the contract, had ordered coal from plaintiff after March 31, 1917, without agreeing on the price therefor, it would undoubtedly have been liable for the market price of the coal, for the reason that the original contract had expired. Suppose that after the coal was delivered the defendant communicated to plaintiff its desire to renew the original contract, would the renewal relate back in date to March 31, 1917, and thus fix the price of coal, so purchased, at the contract price? Under respondent's construction of the renewal clause the contract price would control. Thus the defendant would be in a position to take an undue advantage of the plaintiff; he could take his reasonable time to see whether or not

the market price of coal would be lower or higher than the price fixed in the contract before making his election under the option. The character of the contract is such that the parties must have intended that the option was to be exercised within the life of the contract.

The question under consideration has been decided by the courts in construing similar clauses contained in leases. In such cases it has been held that the optional right to renew must be exercised on or before the termination of the original contract. [Thiebaud et al. v. The First National Bank of Vevay, 42 Ind. 219, Renoud v. Daskam, 34 Conn. 512; Darling v. Hoban, 53 Mich. l. c. 602; Tilton v. Sterling Coal & Coke Company, 28 Utah, 174; 5 Elliott on Contracts, sec. 4557.]

We can see no reason for the application of any different rule than the above in construing the contract under consideration. Such has been the decision in Monmouth Electric v. Gas Company, 83 N. J. L. 531, and in San Pedro Salt Co. v. Hauser Packing Company, 13 Cal. App. 1.

In the New Jersey case, supra, the contract was for the furnishing of electric current at a stipulated rental for a fixed period of three years and contained the provision that the party furnishing the current "agreed to renew the contract at its expiration for an additional three years should the party of the first part desire such a renewal." The court held that the party furnishing the current was not bound to renew unless the desire of the other party for such renewal was communicated on or before the last day of the original term.

In the California case, supra, the contract was dated on August 27, 1905, and the plaintiff therein contracted in writing "to deliver to defendant during the ensuing year two hundred tons of salt at the price of five dollars per ton as therein stipulated. The contract contained a provision to the effect that the defendant should have the option to renew the agreement for a second year, but failed to specify the time within which defend-

ant should elect to renew the agreement. By its terms the contract expired August 27, 1906. The defendant did not elect to renew the contract prior to its expiration. Appellant contended, however, that as the contract fixed no time when it should exercise its option to renew, it had a reasonable time after the expiration thereof within which to act.'' The court in passing upon the question says:

"Where a contract provides for its renewal at the election of one party thereto without fixing the time when such option shall be exercised, the time for giving notice of such renewal cannot be extended beyond the date of the expiration of the contract. The right to renew, like other rights, must necessarily cease when there is no longer a contract under and by virtue of which to claim the privilege. [Shamp v. White, 106 Cal. 220, 39 Pac. 537; Renoud v. Daskam, 34 Conn. 512; Thiebaud et al. v. First Nat. Bank, 42 Ind. 212.] Under the contract defendant was required to take the salt so purchased thereunder within one year after the date of the contract. It might with equal propriety insist that it had a right to delivery of the salt within a reasonable time after the expiration of the year as to insist upon the right of renewal of the contract after it had expired.''

We think the rule announced in the above cases is sound and should be applied to this case. Here the parties have established by contract a continuous relation expiring at a fixed time; the option given to renew that relation could not be exercised after the original contract was at an end.

The commissioner recommends that the judgment of the circuit court of the city of St. Louis, in favor of the defendant, be reversed and the cause remanded with directions to enter up a judgment in favor of the plaintiff and against the defendant for seven hundred and one dollars and fifty-four cents, with lawful interest thereon from April 14, 1919.

PER CURIAM:—The opinion of BRUERE, C., is adopted as the opinion of the court. The judgment of the circuit court of the city of St. Louis, in favor of the defendant, is accordingly reversed and the cause re-, manded with directions to enter up a judgment in favor of the plaintiff and against the defendant for seven hundred and one dollars and fifty-four cents, with lawful interest thereon from April 14, 1919. *Allen, P. J.,* and *Becker* and *Daues, JJ.;* concur.