## THE AMERICAN PRESS COMPANY v. CITY OF ST. LOUIS, Appellant.

### In Banc, May 21, 1926.

1. **LEASE: Renewal: Extension of Term.** The word "renewal" in a lease for two years "with the privilege of renewal of from one to six years at the same annual rental" implies nothing more than an extension of the term.

2. ——: ——: **Demise for Extended Term.** A lease for two years "with the privilege of renewal of from one to six years at the same annual rental" was a present demise for the extended term. It was a lease to terminate at the end of the two-year period, without any action on the part of the lessor, but extended for six years from the end of the two-year period, with an option given the lessee to cut down the period of extension, if he so desired and elected to do so, from six years to not less than one year.

3. ——: ——: **Holding Over: Unilateral Agreement: Option: Construction.** A lease for a term of two years "with the privilege of renewal of from one to six years at the same annual rental" is unilateral in its terms, and gave to the lessee, without any action on the part of the lessor, the option of holding the premises after the expiration of the two-year period, and gave to the lessee the sole right to determine whether he would extend the lease for one year or three years or six years; and contracts which are optional

American Press Co. v. St. Louis.

in respect to one party are construed strictly in favor of the party which is bound, and against the party to whom the option is given. Therefore, where the lessee, in said lease, failed to exercise his option and to make his election, before entering upon the extended period, but remained in possession for two years after the expiration of the two-year period, paying rent, and then vacated the premises, said lessee, in contemplation of law, elected to extend the lease for the full extended term of six years, and is liable for rent for the whole of said six-year period.

4. ————: **Compliance by Lessor: Demurrer to Evidence: Presumption.** Where the lessee is sued on the theory that he exercised his option to extend the lease and has not paid rent for a part of the extended period, and at the trial introduced no evidence, but stood on his demurrer to plaintiff's evidence, it will be presumed, in the absence of evidence to the contrary, that the lessor did his duty and complied with the terms and requirements of the lease.

5. ————: **Demise for Extended Period: Option: One Exercise.** Where the owner of premises leased them to a city "with the privilege of renewal of from one to six years with the same annual rental" the lessee was entitled to exercise only one election under his option to extend the lease after the expiration of the two-year period; if the lessee had notified the lessor, before entering upon the extended period, that he would occupy the premises for only one year more, the term would have been definitely fixed and the status of both parties determined thereby, and neither would have had an undue advantage over the other; but said provision gave to the lessee the sole right to determine whether he would extend the period, and where he failed to exercise his option and to make an election, but remained in possession for two years after the expiration of the two-year period, he elected, in contemplation of law, to extend the lease for the full six-year period.

6. ————: **Power of City.** The city of St. Louis, by virtue of its charter, was authorized in 1915 to lease private property to be used as offices by it sheriff.

Corpus Juris-Cyc. References: Appeal and Error, 4 C. J., Section 2708, p. 765, n. 83. Contracts, 13 C. J., Section 516, p. 546, n. 51. Landlord and Tenant, 35 C. J., Section 121, p. 1008, n. 96; Section 125, p. 1010, n. 22; Section 129, p. 1012, n. 51 New; Section 159, p. 1025, n. 17, 20; Section 160, p. 1026, n. 22; Section 175, p. 1036, n. 30, 31, 32; Section 478, p. 1182, n. 14. Municipal Corporations, 28 Cyc., p. 609, n. 7.

Appeal from the Circuit Court of City of St. Louis.—
*Hon. Moses Hartmann*, Judge.

AFFIRMED.

*Oliver Senti* and *Charles J. Dolan* for appellant.

(1) In the absence of an express understanding between respondent and appellant, appellant cannot be presumed to have renewed the lease in question for a period of six years by merely holding over, since it had the privilege under the lease of renewing the tenancy for from one to six years. Lanham v. McWilliams, 6 Ga. App. 85; Falley v. Giles, 29 Ind. 114; Leake Orphan House v. Hoyle, 139 N. Y. Supp. 1098; Canonico v. Lucente, 40 Pa. Super. 75; Salzer v. Manfredi, 114 Wash. 666; 14 A. L. R. 950, note. (2) When an option is given the tenant to extend the lease for one of several periods named, there can be but one election, and if the tenant holds over beyond the original term without notifying the lessor which period he desires, he will be considered to hold over for the shortest period. Cases above. (3) Under the law of Missouri a tenant who holds over after the expiration of a lease, and after the expiration of the renewal term, if any, becomes a tenant from month to month when the property leased is improved city property. R. S. 1919, sec. 6880; Hammon v. Douglas, 50 Mo. 434, 50 Mo. 442; Hammond v. Iliad Amusement Co., 234 S. W. 371. (4) The law will not imply a contract against a municipal corporation. San Antonio v. French, 80 Tex. 575, 16 S. W. 440. (5) In the event of ambiguity, a lease is to be construed most strongly in favor of the grantee. 35 C. J. sec. 478.

*Buder & Buder* and *E. E. Schowengerdt* for respondent.

(1) As the defendant introduced no evidence but stood on its demurrer to the plaintiff's evidence, the court will accept as true all the evidence in plaintiff's favor and all inferences in plaintiff's favor which may, with any degree of propriety, be drawn therefrom, and cannot draw inferences in favor of defendant to counterbalance or overthrow inferences in plaintiff's favor. The evidence should be viewed in the light most favorable to plaintiff. Knapp v. Honly, 108 Mo. App. 360;

Troll v. Drayage Co., 254 Mo. 332; Buesching v. Gas Light Co., 73 Mo. 219; Burgers v. Pan-American Ins. Co., 230 S. W. 315; Burtch v. Wabash Ry. Co., 236 S. W. 338; Evens v. General Exp. Co., 229 S. W. 487; Hunter v. Am. Brake Co., 231 S. W. 659; Rhodes v. Mo. Pac. Ry. Co., 234 S. W. 1026; Anderson v. White, 235 S. W. 834; Planters Co. v. Candy Co., 240 S. W. 473.   (2)   The clause of the lease gave to defendant the option of renewing or extending the lease. This clause should be strictly construed in favor of plaintiff and against the defendant. Contracts which are optional in respect to one party are strictly construed in favor of the party that is bound and against the party in whose favor the option runs. Here the option in favor of defendant was unilateral, the plaintiff being bound to do nothing except at the option of the defendant. If there is any ambiguity whatsoever in this clause of the lease, relating to this option of renewal or extension, such ambiguity should be construed in favor of plaintiff and against the defendant. Rutledge Coal Co. v. Jewelry Co., 209 Mo. App. 292; 2 Elliott on Contracts, p. 833, sec. 1548; Williston on Contracts, sec. 620; Kolachny v. Galbreath, 26 Okla. 779; Frank Oil Co. v. Belleview Gas Co., 29 Okla. 732; Harding v. Gibbs, 125 Ill. 85.   (3)   The holding over by defendant of said premises for more than four years after the termination of the original term, and the payment of annual rental as provided in said lease, had the effect of renewing or extending the term of said lease until April 30, 1923.   Blanchon & Bartholomees v. Distilling Corp., 200 Mo. App. 610; Medicus v. Altman, 199 Mo. App. 466; Ins. & Law Bldg. Co. v. Natl. Bank, 71 Mo. 58; Ins. & Law Bldg. Co. v. Natl. Bank, 5 Mo. App. 333; Realty Company v. Brecht, 109 Mo. App. 25; Lewis v. Perry, 149 Mo. 257; Minton v. Steinhauer, 243 Mo. 56; Curtis v. Sturgis & Co., 64 Mo. App. 535; Finney v. St. Louis, 39 Mo. 177; Leggett v. Exposition Co., 157 Mo. App. 108.   (4)   Missouri courts have held that no distinction is to be made between a "privilege of renewal" and an "extension" of term of a

lease. Rutledge Coal Co. v. Jewelry Co., 209 Mo. App. 297; Medicus v. Altman, 199 Mo. App. 466; Blanchon & Bartholomees v. Distilling Corp., 200 Mo. App. 610. See also Howell v. City of Hamburg, 165 Cal. 172; Ranlet v. Cook, 44 N. H. 512. (5) A municipal corporation may make itself liable under a holding over to the same extent as an individual. Witt v. New York, 29 N. Y. Super, 441; Davies v. New York, 93 N. Y. 250, 83 N. Y. 207.; Chicago v. Peck, 98 Ill. App. 434. (6) Even if the tenant notifies the landlord that he does not intend to hold over for another term, still in the absence of an assent or new agreement with the landlord, that would not protect him if he remains in possession. 35 C. J. 1030; Wolff v. Wolff, 69 Ala. 549; United Merc. Co. v. New York Hippodrome, 113 N. Y. Supp. 740; Realty Co. v. Brecht, 109 Mo. App. 25.

RAILEY, C.—On August 26, 1922, the American Press Company, a corporation, filed in the office of the Clerk of the Circuit Court of the City of St. Louis, Missouri, an action against the city of St. Louis aforesaid, to recover certain rent alleged to be due it. The petition alleges that on April 23, 1915, the parties aforesaid entered into an indenture of lease, whereby plaintiff let unto defendant, for the period beginning May 1, 1915, and ending April 30, 1917, at a rental of two hundred and fifty dollars per month, payable at the end of each and every month during the term of said lease, the following premises situated in said city, said premises to be used as an office for the sheriff of said city, to-wit: The first floor room, known as 421 Chestnut Street, of the Times Building, in City Block 101.

It is alleged that under the terms of said lease, it was provided that defendant should have the privilege of renewing the same from one to six years, at the same annual rental, and that at the termination of said two years defendant availed itself of the right of renewal, and renewed said lease for the full period of said extension privilege, to-wit, for a period of six years, and

continued in possession pursuant to the exercise of said renewal privilege. It is further alleged that there is now due it from defendant under the terms of said lease, and renewal privilege, the sum of three thousand dollars for the months of August, September, October, November and December, 1921; and for January, February, March, April, May, June and July, 1922; that it has demanded said payment, which was refused by defendant.

The petition concludes with a prayer for judgment in the sum of three thousand dollars with interest and costs of suit.

The answer admits the incorporation of defendant, but denies every other allegation of the petition.

Evidence was introduced by plaintiff in support of its contentions, but the defendant offered no evidence and stood upon its demurrer to plaintiff's evidence.

Plaintiff submitted to the court its finding of facts, as follows:

"The parties to the above-entitled cause having waived trial by jury, and this cause coming on for hearing the 11th day of June, 1923, and during the June Term, 1923, of the above-entitled court, before Honorable M. Hartmann, judge of said court, presiding in Division No. 2 thereof, both parties appear by their attorneys of record and this cause having been submitted to the court on the pleadings and evidence adduced by the plaintiff, the defendant having elected to stand upon its demurrer to the evidence, filed at the close of plaintiff's case, the same having been overruled by the court, the court, pursuant to the request of defendant, makes the following finding of facts:

"That plaintiff is a corporation organized under the laws of the State of Missouri and that the name of plaintiff formerly was 'German-American Press Association;' that its name has, since the execution of the lease hereinafter referred to, been changed to 'The American Press' and that the city of St. Louis is a municipal corporation, duly organized and existing under the laws of the State of Missouri.

"That on the 23rd day of April, 1915, the plaintiff and defendant entered into and duly executed a lease for certain premises, to be used and occupied as an office for the sheriff of and for said city of St. Louis, being the first floor of premises known as 421 Chestnut Street in the Times Building in City Block 101 in the city of St. Louis, Missouri; that said lease, which was executed by the plaintiff and the defendant is in words and figures as follows:

" 'This agreement made and entered into this twenty-third day of April, 1915, by and between German-American Press Association, party of the first part, and the city of St. Louis, acting herein by and through the City Comptroller, party of the second part:

" 'Witnesseth, as follows:

" 'That said party of the first part hereby demises and leases unto the said party of the second part, the following described premises, situated in the city of St. Louis, Missouri, to-wit: The first floor room, known as No. 421 Chestnut Street, of the Times Building, in City Block No. 101, for a term and period beginning on the first day of May, 1915, and ending and to be fully completed on the thirtieth day of April, 1917 (with the privilege of renewal of from one to six years at the same annual rental); the said premises to be used and occupied as an office for the sheriff in and for the city of St. Louis, upon the following terms and conditions, to-wit:

" 'First. For the use and rent of said premises, the said party of the second part hereby agrees and promises to pay to said party of the first part the sum of two hundred and fifty dollars monthly, payable at the end of each and every month during the term hereby created.

" 'Second. The said party of the first part hereby undertakes and agrees to make such alterations and changes in the premises aforesaid as may be needful and necessary to adapt the same for the uses and purposes of said sheriff, and to the satisfaction of the sheriff and the Comptroller of the city of St. Louis, and thereafter

to keep the said premises in a constant state of repair, to the satisfaction of the sheriff and said Comptroller, during the continuance of this contract; and the said party of the first part hereby further undertakes and agrees, for the amount aforesaid to it to be paid by said party of the second part, to furnish all the light, heat, water and janitor service that may be required for said premises, to the satisfaction of the said sheriff for the city of St. Louis; the party of the second part hereby agreeing, however, that it will make no charge against the said party of the first part for the water that may be used in the said premises above described and covered by this contract.

" 'Third. If the said premises shall be destroyed by fire, or by the elements, or should be injured to such an extent by fire or the elements as to render the same untenable, for the purposes aforesaid, then this lease shall end and determine.

" 'Fourth. If the said party of the first part at any time fails to keep and perform any of the covenants or agreements herein stipulated, the term hereby created shall, at the option of the city of St. Louis, cease, end and determine as fully as if by lapse of time.

" 'In witness whereof, the said party of the first part has hereunto set its hand and has hereto affixed its seal, and the said party of the second part, acting herein by and through James Y. Player, its Comptroller, has signed its corporate name and affixed its corporate seal, attested by its Register, the day and year hereinbefore first mentioned.

" 'GERMAN-AMERICAN PRESS ASSOCIATION,
" 'By EDW. L. PREETORIUS, Pres.
" 'CITY OF ST. LOUIS,
" 'By JAMES Y. PLAYER, Comptroller.
" 'Attest: M. R. WITTER, Register.
" 'City Counselor's Office,
" 'St. Louis, April —, 1915.
" 'The foregoing lease is in due form according to law.

" 'WILLIAM E. BAIRD,
" 'City Counselor.
" 'German-American Press Association (Corporate Seal).
" 'St. Louis, Mo. (The Common Seal of The City of St. Louis).'

"That at the time said lease was entered into and executed, James Y. Player was the Comptroller of and for the said city of St. Louis and Joseph F. Dieckmann was the sheriff of and for said city of St. Louis; that after the execution of said lease and pursuant to the terms thereof the said sheriff of the city of St. Louis entered into and took possession of and occupied the said premises on the first day of May, 1915, and continued in the possession thereof up to and including the first day of January, 1917; that on said first day of January, 1917, George T. Weinbrenner, who, at the prior general election in November, had been elected for a term of four years to the said office of sheriff of the city of St. Louis, qualified as such sheriff and took possession of said premises as such and continued in the possession thereof up to the first day of January, 1921; that on said first day of January, 1921, Charles E. Mohrstadt, who, at the prior general election in November, had been elected for a term of four years to the said office of sheriff of the city of St. Louis, qualified as such sheriff and took possession of said premises as such and continued in the possession thereof up to and including the 31st day of July, 1921; that up to the 31st day of July, 1921, plaintiff and defendant observed all the terms, conditions and covenants of said lease and defendant paid to plaintiff the rental in the sum of two hundred and fifty dollars per month and at the times as specified in said lease; that on said 31st day of July, 1921, defendant vacated the premises aforesaid, but the plaintiff refused to accept surrender or possession thereof.

"That thereafter plaintiff and defendant agreed that plaintiff should take possession of said premises without prejudice, and with the understanding that the

American Press Co. v. St. Louis.

stipulation hereinafter mentioned would be entered into and duly executed by the parties; that thereupon plaintiff took possession of said premises and plaintiff and defendant entered into the following agreement and stipulation, which was offered in evidence by the plaintiff and admitted in evidence by the court and marked 'Plaintiff's Exhibit B' which is in words and figures as follows:

" 'Whereas, by instrument dated April 23, 1915, The American Press, a corporation, then having the name of German-American Press Association, leased to the city of St. Louis, a municipal corporation, at a rental of two hundred fifty dollars monthly, the first floor room known as No. 421 Chestnut Street in St. Louis, for a term beginning on May 1, 1915, and ending on April 1, 1917 (with the privilege of renewal from one to six years at the same rental); and,

" 'Whereas, under date of June 27, 1921, the said city gave to The American Press one month's notice in writing, of its intention to terminate its tenancy as of July 31, 1921, and did actually remove from said premises on or before July 31, 1921; and,

" 'Whereas, the said city contended and still contends that at and after the time that it gave said notice its tenancy was a monthly tenancy only and that such tenancy terminated on July 31, 1921, while The American Press contended and still contends that the aforesaid lease had been extended or renewed so as not to expire until April 30, 1923, and claimed and still claims that the said city is liable to it for the rental of said premises at the rate of two hundred fifty dollars per month from July 31, 1921, to April 30, 1923, subject, however, to the reduction hereinafter stipulated; and,

" 'Whereas, in order to reduce its alleged damages as much as possible The American Press moved into and took possession of said premises on July 31, 1921, and has ever since occupied and used same in its publishing business, with the understanding that the following stipulation would be entered into.

" 'Therefore, it is hereby stipulated and agreed by and between The American Press and the city of St. Louis as follows: ·

" 'That such taking possession, occupancy and use by The American Press of the said premises shall not be invoked or used as a matter of defense to any suit that may be brought by The American Press against the city for rent under said alleged lease, but in any such suit, if it be held that the term of the aforesaid lease has been extended for a period beyond July 31, 1921, then the value of the said use and occupation by The American Press of the said premises shall be conclusively taken and assumed to be the sum of one hundred twenty-five dollars per month for each month of such period, if any, after July 31, 1921, and if there be any recovery by The American Press in any such suit, then in arriving at the amount of such recovery the city shall be given credit for the full amount of the said value of said use and occupancy by The American Press, and such recovery, if any, shall be limited to the amount of the balance of the alleged rent, to-wit, one hundred twenty-five dollars per month for each month, if any, that the said lease shall be held to be in force after July 31, 1921.

" 'This stipulation may be read in evidence in said suit, but nothing herein contained shall affect the respective contentions of the parties as to whether the term of the aforesaid lease extended beyond July 31, 1921.

" 'THE AMERICAN PRESS,
" 'By E. E. SCHOWENGERDT,
" 'BUDER & BUDER, Its Attorney.
" 'CITY OF ST. LOUIS,
" 'By HENRY A. CAULFIELD, City Counsellor.'

"That plaintiff has demanded payment from defendant of rental for each month since the 31st day of July, 1921, but defendant has failed and refused to pay for any of said months.

"M. HARTMANN, Judge."

The above finding of facts was approved by order of the court.

The plaintiff asked, and the court gave, the following declaration of law:

"The court declares the law to be that under the finding and conclusion of facts by the court in this case the judgment must be for the plaintiff."

The defendant asked, and the court refused, the following declaration of law:

"The court, at the close of the whole case, declares the law to be that a tenant holding under a lease for a term of years with the privilege of renewal from one to six years at the same annual rental, who holds over after the expiration of the original term, shall not be presumed to have agreed to or accepted a renewal of the lease for a term longer than one year, but after he shall have held over for one year shall thereafter be presumed to be a tenant from month to month."

The court, pursuant to its finding of facts, entered judgment for plaintiff, and by stipulation of parties the amount of the judgment was fixed at $1,500 with interest from August 26, 1922, at six per cent per annum.

Defendant, in due time, filed its motion for a new trial, which was overruled, and an appeal was allowed it to this court.

I.   This case is here on a demurrer to plaintiff's evidence. It involves the construction of a written lease, and there is no controversy over the facts.

On April 23, 1915, plaintiff leased to defendant, in writing, certain real estate in St. Louis, Missouri, described in petition, as follows:

"The first floor room, known as 421 Chestnut Street, of the Times Building, in City Block No. 101, for a term and period beginning on the first day of May, 1915, and ending and to be fully completed on the thirtieth day of April, 1917 (with the privilege of renewal of from one to six years at the same annual rental); the said premises to be used and occupied as an office for the sheriff in and for the city of St. Louis, upon the following terms and conditions, to-wit:

"First.   For the use and rent of said premises, the said party of the second part hereby agrees and promises to pay to said party of the first part the sum of two hundred and fifty dollars monthly, payable at the end of each and every month during the term hereby created" etc.

It appears from the evidence that the sheriff of defendant entered into possession of said premises on the first day of May, 1915, and remained in possession until July 31, 1921, on which day he removed from the said premises, having previously given to respondent one month's notice of its intention to terminate said tenancy. The original term expired on April 30, 1917, and no agreement had been arrived at between respondent and appellant regarding the renewal of the term when appellant continued its occupancy of the premises in question and paid the same rent provided for in the lease. Respondent likewise complied with all the requirements of said lease during the occupancy of said premises by defendant.    Appellant occupied said premises for a period of four years and two months, beginning on May 1, 1917, and ending on July 31, 1921.    This action was commenced on August 26, 1922, to recover the rent from August 1, 1921, to July 31, 1922, amounting to $3,000.   Appellant contends that when it gave notice to terminate said tenancy, it held the premises in question by a monthly tenancy only, and that said monthly tenancy terminated on July 31, 1921, by virtue of the notice aforesaid.   Respondent contends that appellant, by continuing in possession, paying the rent as it had formerly done after the expiration of the original term of two years, had renewed the lease for six years, and that appellant continued to be liable to respondent for the rental of the said premises after July 31, 1921, and until April 30, 1923.   Pursuant to a stipulation of parties, judgment was entered below for the sum of $1,500.

With the above summary of the case, we will proceed to a consideration of the law questions involved.

.II.  Plaintiff leased the property in controversy to defendant until April 30, 1917, "with the privilege of renewal of from one to six years at the same annual rental." While some courts of other states, and some lawwriters, make a distinction between a covenant in a lease for a renewal and a provision therein for the extension of the term, at the option of the lessee, yet the courts of our State have declined to make any such distinction, and in a case like the one before us, have uniformly held that the word "renewal" implies nothing more than an extension of the term. [Insurance Co. v. Bank of Missouri, 5 Mo. App. 333 (Aff. 71 Mo. 58); Quinette v. Carpenter, 35 Mo. 502; Insurance Co. v. Bank of Missouri, 71 Mo. 58; Lewis v. Perry, 149 Mo. 1. c. 267; Medicus v. Altman, 199 Mo. App. 1. c. 469; Blanchon v. Distilling Corp., 200 Mo. App. 610; Rutledge v. Jewelry Co., 209 Mo. App. 1. c. 297, 237 S. W. 1. c. 850. See also Ranlet v. Cook, 44 N. H. 512; Howell v. City of Hamburg Co., 165 Cal. 172, 177.]

*Renewal.*

The clear and forceful opinions written by Judge ELLISON, in the Medicus case, supra, by Judge TRIMBLE in the Blanchon case, and by BRUERE, C., in the Rutledge case, leave no room for cavil or doubt as to the law in this State, as above indicated, based on the facts before us.

III.  Construing the word "renewal," to mean an extension of the lease, as held in above authorities, the law is declared in 16 Ruling Case Law, sec. 389, page 885, as follows: "A distinction is made between a covenant in a lease for a renewal and a provision therein for the extension of the term at the option of the lessee, the courts treating the latter upon the exercise of the privilege, as a present demise for the full term to which it may be extended and not a demise for the shorter period with a privilege for a new lease for the extended term."

*Demise for Extended Term.*

In Medicus v. Altman, 199 Mo. App. 466, ELLISON, J., following the ruling of this court in Insurance & Law

Bldg. Co., v. Bank of Missouri, on page 468, said: "The lease may be said to be, in effect, a present demise for the term, as extended, with the right in the tenant to reject the extension, if he so elects."

The principle of law as announced in above quotations is well supported by the decided weight of authority. [Montgomery v. Board of Coms. of Hamilton Co., 76 Ind. 362; Delashman v. Berry, 20 Mich. 292; Flynn v. Bachner, 168 Mich. 424; Carhart v. White, 122 Tenn. l. c. 466; Quinn v. Valiquette, 80 Vt. 434; Kimball v. Cross, 136 Mass. 300; Stone v. St. Louis Stamping Co., 155 Mass. l. c. 270; Sheppard v. Rosenkrans, 109 Wis. l. c. 62-3; Harding v. Seeley, 148 Pa. St. 20; Ranlet v. Cook, 44 N. H. 512; Howell v. City of Hamburg Company, 165 Cal. 172, 177; Miller v. Albany Lodge F. & A. M., 168 Ky. 755; Hurley-Tobin Co. v. White, 84 N. J. Eq. 60; Kean v. Story & Clark Piano Co., 121 Minn. 198; Probst v. Rochester Steam L. Co., 171 N. Y. 584; Holton v. Andrews, 151 N. C. 340; 1 McAdam on Landlord & Tenant (3 Ed.) 160; 18 Am. & Eng. Ency. Law, p. 690; 6 Am. & Eng. Ann. Cases, 339 and cases cited; 24 Cyc. 1008.]

We think it manifest from reading the foregoing authorities that the lease was to terminate as expressed therein on April 30, 1917, without any action upon the part of the lessor, the lease by its terms was extended for a period of six years from the above date, with an option given the lessee to cut down the extension, if he desired and elected to do so, from six years to not less than one year.

There is no ambiguity in the terms of the lease. It definitely extended the same for six years, subject to the option of lessee to hold the premises by election between one and six years. When the original lease terminated on April 30, 1917, the lessee had the sole right to determine under its option, without regard to the lessor, whether it would extend the lease for one year, three years or for the full term of six years, for which the lessor was bound. The lessee failed to exercise its op-

tion and make its election, but continued in possession of the premises, paying the same rent provided for in the lease, up to July, 1921, during which time the plaintiff continued to perform its part of said contract.

We have in this case a lease which is unilateral in its terms so far as the extension is concerned. The plaintiff could not compel the defendant to continue in possession after the original termination of the lease, nor could it deprive defendant of its option to hold said premises for a period of six years. It is well-established law, that contracts which are optional in respect to one party are strictly construed in favor of the party that is bound, and against the party in whose favor the option runs. [Rutledge & Taylor Coal Co. v. Jewelry Co., 209 Mo. App. l. c. 298, 237 S. W. 849; 2 Elliott on Contracts, sec. 1548, p. 833; Williston on Contracts, sec. 620; Kolachny v. Galbreath, 26 Okla. 779; Frank Oil Co. v. B. G. & Oil Co., 29 Okla. 732; Harding v. Gibbs, 125 Ill. 85.]

The authorities heretofore cited hold that on the facts of this case, the lease was extended for six years, without any action being required upon the part of plaintiff, subject to defendant's option to declare by election whether he would hold the premises for a less term than six years. Considered in the light of justice and reason, we hold, that defendant, having failed to make its election, before entering upon the renewed extension, in contemplation of law, should be held to have acquiesced in the lease of said premises for the full period of six years, to which it had been extended. There is no hardship in this construction, for the obvious reason, that defendant had control of the situation (while plaintiff was bound for the six years), and could have shortened the term by election, under its option at less than six years if it desired to do so.

IV. As heretofore stated, there is no ambiguity in the lease before us. It is definite and certain as to all

of its provisions. Even the option for a renewal or extension is not ambiguous, for it was within

**Construction of Option.**
the exclusive power of defendant to determine whether it would hold the premises for six years, or less than said term. There is no occasion therefore for construing the lease favorably to defendant, when it alone had the right to fix the term by election. On the other hand, as plaintiff was vested with no discretion, and defendant was vested with the option to fix the terms of the lease, the latter, under the authorities heretofore cited, should be construed most favorably in favor of the lessor as to a six-year term, rather than the short term of one year.

V. The city of St. Louis by virtue of its charter was authorized to make the lease in controversy.

**Power of City.**
[Secs. 4 and 8 of Art. 1.] The lease was likewise signed by the defendant as required in Section 9 of Article 25 of said charter.

VI. Appellant in its reply brief contends that there is no basis for the finding of the trial court, that plaintiff complied with the terms and requirements of said lease. The defendant is here upon a demurrer to the evidence. There is nothing in the record tend-

**Compliance.**
ing to show, that plaintiff failed to perform any of the requirements of said lease. In the absence of evidence to the contrary, the law will presume that plaintiff did its duty and complied with the requirements of said lease. [Henson v. Ry. Co., 256 S. W. l. c. 775; Pate v. Dumbauld, 250 S. W. l. c. 52 and cases cited (Mo.); State v. Roderman, 297 Mo. l. c. 152, 248 S. W. 964; Wooldridge v. La Crosse L. Co., 291 Mo. l. c. 247, 236 S. W. 294; State v. McNeal, 237 S. W. l. c. 741 and cases cited (Mo.); Wells v. Wells, 279 Mo. l. c. 69, 213 S. W. 830.]

VII.  We agree with counsel for appellant, that by the terms of the lease, defendant was only entitled to a single election under its option.  If it had notified plaintiff, under its option, that it would occupy the premises for one year only, the term would have then been definitely fixed, and the status of both parties determined thereby, without giving either an undue advantage over the other.

<div style="float:left">One Election.</div>

VIII.  We have endeavored to pass upon all the material questions involved in the case and, without hesitation, hold, upon both principle and authority, that the trial court reached a correct conclusion in its disposition of the case.

The judgment below is accordingly affirmed. *Higbee, C.,* concurs.

PER CURIAM:—This case coming into Court in Banc, the foregoing opinion of RAILEY, C., is adopted as the decision of the court. *Blair, C. J., Walker, Atwood* and *Graves, JJ.,* concur; *Ragland, White* and *Otto, JJ.,* dissent.