AUTO PARTS, INC., *v.* JACK SMITH BEVERAGES, INC.

1. LANDLORD AND TENANT—PAYMENT OF RENT—CHANGE OF LEASE
   PERIOD.

   In the absence of an agreement changing the lease period, the
   fact that the rent was paid at varying times from 6 to 21
   days after the first of the month, and that there had been an
   allowance of a proportionate amount of the monthly rental
   representing the number of days which elapsed between the
   first of the first month and the date upon which alterations
   were completed did not operate to change lease expressly pro-
   viding for a term of one year from and after the first of a
   given month.

2. SAME—RENEWAL OF LEASE—ORAL AGREEMENT—PREPONDERANCE
   OF EVIDENCE.

   Claimed oral agreement with lessor that one-year lease would
   be continued from year to year with either party having the
   right to terminate it by giving the other party notice 60 days
   prior to the expiration of any year period *held*, not to have
   been established by a preponderance of the evidence.

3. SAME — EXPIRATION OF LEASE — HOLDING OVER — CONSENT —
   RENEWAL.

   Where a lessee under a written lease for a fixed term holds over
   after the expiration of the term, the lessor must consent to
   or acquiesce in such holding over in order to create a renewal
   of the tenancy on a year-to-year basis by operation of law.

4. SAME—HOLDING OVER—CONSENT OF LANDLORD—TENANCY FROM
   YEAR TO YEAR—QUESTION OF FACT.

   Whether or not the receipt of rent by a landlord from a tenant
   holding over after expiration of a fixed term or other act or
   acts on the part of a landlord indicate with a certainty a de-
   sign to continue the relation of landlord and tenant on a
   tenancy-from-year-to-year basis is a matter of intention in
   each case to be determined as a question of fact.

5. SAME—HOLDING OVER—TENANCY FROM YEAR TO YEAR—ASSENT
   OF TENANT—PAYMENT OF RENT.

    The assent of a tenant to a new lease from year to year by
    holding over after the expiration of a fixed term is usually
    implied from the fact of his remaining in possession and pay-
    ing rent after his term expired.

6. SAME—HOLDING OVER—TENANCY FROM YEAR TO YEAR.

    Though a tenant under lease for fixed term who remains in pos-
    session after the expiration of the term is presumed to offer
    to take the premises for another year, the landlord is not
    bound to accept the offer and unless he does so by accepting
    the rent or otherwise, the tenancy is terminated and notice to
    quit is not required to be given by him.

7. SAME—HOLDING OVER—NATURE OF TENANCY.

    Where one has lease for years with annual rent reserved, and
    holds over after expiration of term with acquiescence of land-
    lord, tenancy is from year to year on conditions of lease,
    although rent is payable in monthly instalments; but where
    rent reserved is monthly, holding over is from month to month
    unless lease otherwise provides.

8. SAME—HOLDING OVER—ACQUIESCENCE—NOTICE TO QUIT.

    A tenancy for further term of one year will not be implied
    where 10 days after expiration of prior term hold-over tenant
    received notice that its tenancy would terminate two days
    later and notice to quit a month thereafter, since such notices
    indicated the lessor's refusal to consent to or acquiesce in
    such holding over.

9. SAME—TERMINATION OF TENANCY—SUFFICIENCY OF NOTICE TO
   QUIT.

    Where landlord gave tenant holding over after expiration of a
    lease for a year a one-month's notice to quit, such notice was
    sufficient to terminate the tenancy of defendant whether he
    be a tenant at will, by sufferance or on a month-to-month
    basis (3 Comp. Laws 1929, § 13492, as amended by Act
    No. 145, Pub. Acts 1935).

Appeal from Washtenaw; Sample (George W.), J.
Submitted June 7, 1944. (Docket No. 19, Calen-
dar No. 42,725.) Decided October 11, 1944.

Summary proceedings before circuit court com-
missioner by Auto Parts, Incorporated, a Michigan

corporation, against Jack Smith Beverages, Incorporated, a Michigan corporation, for possession of land. Judgment for plaintiff. Defendant appealed to circuit court. Judgment for defendant. Plaintiff appeals. Reversed and remanded for entry of judgment for plaintiff.

*Hubert Thompson* and *Franklin C. Forsythe,* for plaintiff.

*Burke & Burke* (*Rosenburg, Painter & Navarre,* of counsel), for defendant.

STARR, J. On July 14, 1943, plaintiff began summary proceedings before a circuit court commissioner to recover possession of premises located at 211 West Ann street in the city of Ann Arbor, which defendant claimed to hold under lease from plaintiff's immediate grantors. 3 Comp. Laws 1929, § 14975 (Stat. Ann. § 27.1986). The matter was brought on for hearing, testimony was taken, and on August 27, 1943, the commissioner entered judgment granting plaintiff possession of said premises. Upon appeal and trial *de novo* the circuit court reversed the commissioner and entered judgment for defendant, which in effect denied plaintiff's claimed right of possession. Plaintiff appeals from such judgment.

On May 31, 1940, plaintiff's grantors, W. Howard Grostic and Rhoda Grostic, his wife, leased said premises to defendant for the term of one year "from and after June 1, 1940," at a rental of $40 per month payable in advance, and acknowledged receipt of the rent for the month of June. The lease provided that defendant should make certain alterations in the premises and that the lessors would allow the cost of labor and material in making such

alterations "as a credit upon the rent * * * to become due and payable." It also provided that the lessors would allow, as a further credit upon said rent, "the proportionate amount of said monthly rental representing the number of days which elapse between *the commencement of this lease, June 1, 1940,* and the date upon which said alterations are completed." Defendant went into possession about June 1, 1940, and the alterations, which cost $66.53, were completed by June 12th. There is no dispute regarding the cost of the alterations or the credit on rental to which defendant was entitled. About July 1st defendant sent lessors the following statement, together with a check for $13.47 to cover the balance due on the rent for a three-months' period:

"Rent from June 12 to July 12         40.00
Rent from July 12 to Aug. 12          40.00
Rent from Aug. 12 to Sept. 12         40.00
                                     ────
                                     120.00

"May 24, 1940, check # 1071    40.00
Warehouse improvements as
per   attached   statements    66.53
July 6, 1940, check # 1373     13.47
                              ──────
                              120.00"

As hereinbefore mentioned, the lease was for a term of one year "from and after June 1st," and defendant was entitled to credit for the amount of rental which accrued during the first 12 days of June while the building alterations were being made. Instead of computing the rental from June 1st and taking credit for such 12-day period, defendant in preparing the above statement computed the rent from June 12th. The Grostics, as lessors, kept their record of rental payments on a monthly basis beginning June 12th. With the apparent approval of

the lessors, defendant continued in possession of the premises and paid the monthly rental until it received the following letter and notice from the lessors on June 10, 1943:

"Ann Arbor, Michigan,
June 9, 1943.

"Jack Smith Beverages, Incorporated,  *    *    *
"Dear Sirs:

"Having entered into agreement for sale of the premises in Ann Arbor, owned by us, being the cement block structure at number 211 West Ann street, which you occupy as tenant for the storage and distributing purposes, this is to inform you that the tenancy which you hold of said premises will not be renewed.  Said tenancy terminates as of June 12, 1943, if construed to have been on the annual basis. Our understanding has been that the rental has been on a month-to-month basis since termination of your original lease.

"However, if your tenancy is construed to be on a month-to-month basis you would be entitled to thirty days notice.  We desire to give you all of the notice possible, consistent with the terms of the agreement which we have entered into for sale of the property. We therefore deliver to you the attached regular 'notice to quit,' setting the date as late as we can.

"Yours truly,
"W. HOWARD GROSTIC
"RHODA E. GROSTIC."

"NOTICE

"To Jack Smith Beverages, Incorporated

"Please take notice that you are hereby required to quit, surrender and deliver up possession to us of the premises hereinafter described, which you now hold of us as our tenant, on or before July 12, 1943, for the reason that we intend to terminate your tenancy, and to repossess ourselves of such premises on

the date above mentioned, said premises being described as follows, to-wit: (description of premises).

* * *

"You are further notified that from and after this date, you will be liable to the owners for double damages, which the owners may suffer by reason of your continued occupancy of said premises, under and by virtue of the provisions of 3 Comp. Laws 1929, § 14986 (Stat. Ann. § 27.1997).

"Dated at Ann Arbor, Washtenaw county, Michigan, June 10, 1943.    * * *

"W. HOWARD GROSTIC
"RHODA E. GROSTIC."

On June 12, 1943, defendant sent lessors a check for $40, which they accepted and cashed. Defendant claims that this check was in payment of the rent from June 1st to July 1st, and lessors claim that it was in payment of the rent from June 12th to July 12th. On June 29, 1943, lessors Grostic and wife conveyed the real estate on which said premises were located to plaintiff Auto Parts, Incorporated, by deed which stated that the property was free from all encumbrances whatever "except as to rights of tenants in possession of any parts of the granted premises." Defendant continued in possession, and on July 10th sent the lessors check for $40, which they refused and returned. On July 14th plaintiff began the present action before the circuit court commissioner.

Plaintiff first contends that by their method and practice of computing, paying, and recording the monthly rentals, the parties to the lease established a new rental period beginning June 12, instead of June 1, 1940, as provided in the lease. The record shows that during the time defendant occupied the premises, it paid the monthly rentals on dates varying from the 6th to the 21st of the respective months,

and that the lessors apparently accepted such payments without objection. In the absence of an agreement changing the lease period, we are satisfied that such method of computing, paying, and recording the rental did not operate to change the lease, which expressly provided for a term of one year "from and after June 1, 1940."

The president of defendant company testified that prior to the expiration of the one-year lease on June 1, 1941, he entered into an oral agreement with lessor ,W. Howard Grostic that the lease would be continued from year to year, with either party having the right to terminate it by giving the other party notice 60 days prior to the expiration of any year period. Lessor Grostic denied having had any conversation with defendant's president regarding renewal of the lease and denied making any oral agreement for its renewal or extension. The trial court made no finding of fact on this point, and from our examination of the record we conclude that defendant failed to establish such claimed oral agreement by the necessary preponderance of the evidence.

The one-year term of the written lease ended June 1, 1941, and, apparently by mutual consent, the tenancy was continued on a year-to-year basis for a second and a third year term, which defendant contends ended June 1, and which plaintiff contends ended June 12, 1943. On June 10, 1943, defendant received the above-quoted letter of notification that its tenancy would terminate June 12th and also notice to quit the premises on July 12th. From such letter it is apparent that the lessors were uncertain as to whether defendant's tenancy was on a year-to-year or month-to-month basis. Under their theory that a new lease period had been created, whereby the year term ended June 12th, their letter notified de-

fendant that his tenancy terminated on that date. On the theory that the tenancy might be construed to be on a month-to-month basis, they notified defendant to quit and vacate the premises on July 12th. As above stated, defendant sent the lessors a check for $40 on June 12th, which under plaintiff's contention paid the rent to July 12th, and under defendant's contention paid the rent to July 1st. On July 10th defendant sent the lessors another check for $40, which they refused and returned.

The question presented is whether or not there was a renewal of the tenancy for a one-year period from and after June 1, 1943. Defendant contends that its holding over after June 1st and the lessors' acceptance of its check sent June 12th operated as a renewal for a further year period ending June 1, 1944. Plaintiff contends that the lessors did not consent to or acquiesce in defendant's holding over after June 1st; that its holding over until June 10th was not for a sufficient period of time to create a legal renewal of the tenancy for the further term of one year; and that their acceptance of the rent for one month, after they had given notice to quit, could not be construed as a consent to such renewal.

Although defendant held over after June 1, 1943, it is clear that the lessors did not consent to or acquiesce in such holding over. On June 10th they indicated their refusal by serving defendant with notices of termination and to quit. The law is established in this State that where a lessee, under a written lease for a fixed term, holds over after the expiration of the term, the lessor must consent to or acquiesce in such holding over, in order to create a renewal of the tenancy on a year-to-year basis by operation of law. In the case of *Faraci* v. *Fassulo*, 212 Mich. 216, 218, we quoted with approval the rule stated in 24 Cyc. pp. 1031–1033, as follows:

"According to the great weight of authority, where a tenant under a demise for a year or more holds over at the end of his term without any new agreement with the landlord, he may be treated as a tenant from year to year. *It is held, however, that a tenancy from year to year cannot be inferred from the mere fact of holding over by the tenant; the landlord must in some manner recognize the tenancy.* Thus the receipt of rent by the landlord from one so holding over indicates with certainty a design to continue the relation of landlord and tenant, and a tenancy from year to year will arise. Such intention should in each case be found and determined as a question of fact."

In *Rice* v. *Atkinson, Deacon, Elliott Co.*, 215 Mich. 371, 374 (19 A. L. R. 1399), the majority opinion quotes with approval the following statement from 1 Underhill on Landlord and Tenant, p. 157, as follows:

"*The assent of both parties to the original lease is necessary to create the new lease from year to year by holding over.* This assent on the part of the tenant is usually implied from the fact of his remaining in possession and paying rent after his term has expired. * * * And though by remaining in possession the tenant is presumed to offer to take the premises for another year, the landlord is not bound to accept the offer, and unless he does so by accepting rent or otherwise, the tenancy is terminated and notice to quit is not required to be given by him."

In *Marks* v. *Corliss' Estate*, 256 Mich. 460, we said:

"Where one has a lease for years, with annual rent reserved, and holds over after the expiration of the term *with the acquiescence of the landlord*, the tenancy is from year to year on the conditions of the

lease, although the annual rent is payable in monthly instalments (*Laughran* v. *Smith,* 75 N. Y. 205; *Faraci* v. *Fassulo,* 212 Mich. 216), *but where the rent reserved is monthly, the holding over is from month to month* unless the lease otherwise provides (*Barlum* v. *Berger,* 125 Mich. 504)."

In the case of *Scott* v. *Beecher,* 91 Mich. 590, 592, 593, we said:

"When a tenant under a valid lease for years holds over, the law implies a contract on his part to renew the tenancy on the same terms for another year; but the landlord may treat him as a trespasser, *or as a tenant holding upon the terms of the original lease.* * * *

"The holding over is the legal expression of the tenant's intention, and *all that is necessary to complete the contract (of renewal) is the consent or acquiescence of the landlord.*"

In the present case the prior term of tenancy ended June 1, 1943. Defendant held over until June 10th, when it received notice that its tenancy would terminate June 12th, and also notice to quit the premises on July 12th. As such notices indicated the lessors' refusal to consent to or acquiesce in such holding over, the law will not imply a renewal of the tenancy for the further term of one year after June 1, 1943.

Under the facts and circumstances shown, we conclude that after June 1, 1943, defendant became a tenant at will or by sufferance, and a one-month's notice was sufficient to terminate such tenancy. 3 Comp. Laws 1929, § 13492, as amended by Act No. 145, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 13492, Stat. Ann. § 26.1104). Even if, under our holding in *Marks* v. *Corliss' Estate, supra,* such tenancy after June 1st were held to be on a month-to-month basis, a one-month's notice would have been

sufficient to terminate it.   Defendant was required to vacate the premises July 12th, that being the date specified in the lessors' notice to quit.

It might be argued under our holdings in *Detroit Free Press* v. *Miller,* 217 Mich. 118, and *Rice* v. *Atkinson, Deacon, Elliott Co., supra,* that as the original written lease terminated June 1, 1941, no notice was thereafter required to terminate defendant's tenancy.   For other authorities see *Bay County* v. *Northeastern Michigan Fair Assn.,* 296 Mich. 634; *Hoffman* v. *Willits,* 194 Mich. 276; *Barlum* v. *Berger,* 125 Mich. 504; *Huntington* v. *Parkhurst,* 87 Mich. 38 (24 Am. St. Rep. 146); *Schneider* v. *Lord,* 62 Mich. 141; 20 Michigan Law Review, pp. 340–344..

Other questions presented do not require consideration.   We hold that defendant's tenancy was not renewed either by agreement of the parties or by operation of law for the further term of one year after June 1, 1943, and that plaintiff was entitled to possession of the premises on July 12, 1943.

The judgment of the trial court is reversed, and the case is remanded with direction to enter a judgment granting plaintiff possession of the premises as of July 12, 1943.   Plaintiff shall recover costs.

NORTH, C. J., and WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.