STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri,
Plaintiff-Respondent,

v.

Eugene G. TIGHE, Defendant-Appellant.

No. 50241.

Supreme Court of Missouri.

Division No. 2.

Dec. 14, 1964.

Motion for Rehearing or to Transfer to Court
En Banc Denied Jan. 11, 1965.

Robert L. Hyder, Melvin Englehart, Jefferson City, for plaintiff-respondent.

Daniel P. Reardon, St. Louis, for appellant.

BARRETT, Commissioner.

In the acquisition of right-of-way for the Mark Twain Expressway (U. S. Route 40) in the City of St. Louis, the state, in 1958, condemned the appellant Eugene G. Tighe's unimproved 1.913 acre tract of land known as 4400 North Broadway. The commissioners to assess damages made an award of $75,000 and both the landowner and the state filed exceptions to the award. In the circuit court there was no formal record of a waiver, but the parties "by entering into trial before the court without objection" (Sup.Ct.Rule 69.01 (b) (4)) in fact waived a trial by jury. The circuit court, at the conclusion of a lengthy trial, made a general finding and for the appropriation of Mr. Tighe's land, assessed "the fair market value of the property taken" at $41,500. Subsequently the landowner filed a request that the court "prepare and file a brief opinion containing a statement of the grounds for its decision and the method of determining any damages awarded." Sup.Ct.Rule 73.01(b). In accordance with this request the court stated and found "the land in the quarry area to contain an unstable fill which would not support a masonry building *without extensive piering.*" (Italics supplied.) The court stated that the landowner's evidence of $145,000 damage was considered but stated that this value was "based upon the assumption that the fill in the quarry area was stable." In addition the court considered the state's evidence that the landowner's damage, in view of the unstable fill, was but "25 cents to 40 cents per square foot." But the court "determined the land to be worth 50 cents per square foot, and multiplied the 83,000 square feet, which the Court found to have been appropriated, by 50 cents." With this sup-

plemental statement of grounds of decision in the record, and after the overruling of his motion for a new trial, the landowner appealed.

In this court the landowner makes these points: one, that for three reasons the "evidence in this case is not sufficient to support the judgment of the Court." The three reasons are (a) that the court ignored and failed to give any credence to the commissioners' report, (b) that the court's finding that the fill "would not support a masonry building" is not supported by competent evidence, and (c) that the "opinions of plaintiff's experts as to the value of defendant's property were entitled to little, if any, weight." His second point is that the court "erred in not permitting defendant to introduce evidence of comparable sales and show that the opinion of his expert was entitled to greater weight." In response to these points the state contends, one, that "the judgment of the trial court is sustained by competent and substantial evidence" and, second, that the court properly refused to permit the landowner's expert witness to testify to the sale price of other property because he could not state the source of his information. In connection with its first contention the state makes these points; (a) that the landowner "failed to sustain the burden of proof as to the reasonable market value of the land," (b) the report of the commissioners "became functus-officio" upon the filing of exceptions "and was not to be considered as evidence by the trial court," and (c) that the record supports the finding that a masonry building could not be constructed in the quarry area of the land "without extensive piering."

The respective contentions have been set forth in this detailed manner because it is apparent from their mere recitation, particularly when considered in connection with their arguments and citation of authorities, that in presenting their case on appeal the parties have not carefully observed the force of the important fact that this was a court-tried case. This is a condemnation proceeding but there does not appear to be any valid reason, certainly since the adoption of the Civil Code of Procedure in 1943, for one method of appellate review of court-tried condemnation cases and another method for other cases tried by the court without a jury. And the procedure governing "cases tried upon the facts without a jury" has long provided that "The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature." Sup.Ct. Rule 73.01(a) (d); V.A.M.S. Sec. 510.310 (1) (4). The statutes regulating the procedure in the exercise of the power of eminent domain do not in specific terms make the civil rule and statute applicable to condemnation proceedings but they do "give the right" upon exceptions to a trial by jury. RSMo 1959, Sec. 523.060, V.A. M.S. And while the terminology is now rather unusual if not quaint the statutes also provide that on exceptions the court "may order a new appraisement, upon good cause shown." And, at the request of either party, "Such new appraisement shall, * * * be made by a jury, under the supervision of the court, as in ordinary cases of inquiry of damages." State Highway Commission, State ex rel. v. Vorhof-Duenke Company, Mo., 366 S.W.2d 329. And of course it is fundamental that "the right" to a jury trial, in condemnation as well as in other civil actions, may be waived, and, as indicated, one of the accepted methods of waiving a jury trial is the one here employed by the parties, "by entering into trial before the court without objection." Sup.Ct.Rule 69.01(b) (4); V.A.M.S. § 510.190(2) (4); Chicago, M. & St. P. Ry. Co. v. Randolph Town-Site Co., 103 Mo. 451, 470, 15 S.W. 437, 442 (a condemnation case.) This is an excessively belabored way of saying that upon appeal of this court-tried condemnation case the general rules apply and the review in this court is necessarily de novo or "upon both the law and the evidence as in suits of an equitable nature." Sup.Ct. Rule 73.01(d).

The significance here of noting the scope of appellate review is that the burden of proof, the admissibility or inadmissibility of certain evidence, including the report of commissioners or the sales of other property, even whether the trial court judgment "is sustained by competent and substantial evidence," (Schmitt v. Pierce, Mo., 344 S. W.2d 120, 122) are all beside the point. The appellate court is admonished that "The judgment shall not be set aside unless clearly erroneous." And not only is the review in this court anew but "The appellate court shall consider any evidence which was rejected by the trial court and duly preserved for the appeal when the appellate court believes such evidence to be admissible." Sup.Ct.Rule 73.01(d). With these rules in mind it is assumed, solely for the purposes of this opinion, that any rejected testimony was admissible in evidence and, even though the landowner objected and excepted to the commissioners' award, that it too was before the court for whatever it was worth. See, however, as a caveat, to note but a single instance and that a jury-tried case, State ex rel. State Highway Commission v. White, Mo. App., 254 S.W.2d 668, 670-671.

Mr. Tighe's tract of land fronted 491 feet on Broadway with a depth to Bissell of 165 feet. Broadway is a main traffic artery from downtown St. Louis to the city limits, and adjacent streets, Bellefontaine, Cornelia and Eleventh (the southern boundary of the tract) are frequently used for heavy truck traffic. In the vicinity there are commercial establishments, truck terminals and some manufacturing plants. This 1.913 acre tract, 83,323 square feet, was, as Mr. Tighe said, "the largest assembled parcel of vacant property on North Broadway." Mr. Tighe was in the business of manufacturing truck bodies and "assembled" this tract of land in 1946 "for a body shop," a project that he did not carry out. The area and this particular property were zoned "J" Industrial and he claimed that its highest and best use was for "a truck terminal, any kind of manufacturing plant, a supermarket because it

would have had a tremendous area for, to park cars on, any supermarket; it could have been the largest gasoline station in the United States." Some of Mr. Tighe's witnesses valued some property in the area at $325 a front foot and this property at $350 a front foot, approximately $170,000. Another expert witness gave it as his opinion that the fair market value of the property on the date of its taking, December 1958, was $145,000. This witness, incidentally, said that the property had been vacant for many years and that "the soil condition is normal for the area."

While there were 83,323 square feet in the lot, approximately 53,000 square feet in the center of the tract was an abandoned quarry, filled, Mr. Tighe said, in 1922 or 1923. Six of the state's witnesses, some of them geological engineers, made numerous tests and borings at various depths and their analysis was that the quarry had been filled with cinders, bricks, mortar, rock fragments, wire, metal parts and pottery, a non-compacted heavy debris. The implication of all this testimony was that the quarry was not filled with the proper material and therefore would not support the type of building required by the applicable fire regulations, a structure of "masonry and closed walls." Other state witnesses gave it as their opinion that the property was not suitable for a truck terminal or a filling station. One expert witness said that the highest and best use of the property was "small industrial" and even that type of structure "would have to be on piling." It was the opinion of this witness that the property "had an aggregate value of $30,-700." Another expert witness was of the opinion that the highest and best use "would be some sort of a development that would be of an industrial type on the land which has not been filled, and surface storage on the area of the former quarry which is filled ground." It was the opinion of this witness that the reasonable market value of the land in 1958 was $33,200.

There is an enormous disparity and conflict in all the testimony as to the land's best use and value, $170,000 or

$145,000 to $30,700 or $33,200, neither of which bears any relation to the commissioners' award of $75,000. Necessarily, therefore, on appeal "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Sup.Ct.Rule 73.01(d). Then of course there is the indubitable fact that the plot remained unimproved from the date of Mr. Tighe's purchase in 1946 to the date of its appropriation by the state in 1958. In short, after a more painstaking consideration of the record and exhibits than indicated by this brief résumé, this court on a review anew finds the facts and the fair market value of the appellant's land at $41,500, as the trial court found them, and accordingly affirms the judgment.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.