**LAND CLEARANCE FOR REDEVELOPMENT AUTHORITY OF KANSAS CITY, Missouri, Plaintiff,**

v.

**Charles E. DUNN, Appellant,**

**Royal Building, Incorporated and the Heirs of Jacob Gershon, Respondents.**

**No. 52005.**

Supreme Court of Missouri, Division No. 2.

July 10, 1967.

John G. Madden, Jr., Donald E. Willson, Madden & Burke, Kansas City, for appellant.

Lyman Field, Rogers, Field & Gentry, Kansas City, for respondents.

DONNELLY, Judge.

This is an action for apportionment of an award in condemnation. The Land Clearance for Redevelopment Authority of Kansas City, Missouri, condemned the Royal Building in downtown Kansas City, Missouri. The date of taking was October 15, 1964. An award of $285,000 was entered for the entire building. Respondents are owners of the fee. Appellant Dunn claims a leasehold interest in the amount of $60,000. The dispute is between Dunn and the owners of the fee. A hearing was held and the trial court, without a jury, found Dunn does not have a compensable interest in the award.

We review the case "upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." S.Ct. Rule 73.01(d), V. A.M.R.

The principals involved were Charles E. Dunn, Jacob Gershon and Ray Gershon, his wife and Joseph Cohen. Dunn is the son-in-law of Jacob and Ray Gershon, both now deceased. Cohen is the president of Royal Building, Inc., a Missouri Corporation, in which the Gershons had no interest.

The Royal Building was a multiple-occupancy building. An undivided one-half interest was owned by Royal Building, Inc. An undivided one-half interest was owned by Jacob Gershon and Ray Gershon, husband and wife. The subject of the controversy is that portion of the building operated as the Town House Restaurant.

For some period of time before July, 1960, the restaurant premises were leased to Town House, Incorporated. Dunn was a shareholder and officer of this corporation. Town House, Incorporated, occupied the premises under leases dated April 1, 1948, April 22, 1955, and August 23, 1957. In July, 1960, the corporation went into voluntary bankruptcy, and, on August 3, 1960, Dunn purchased certain assets of the bankrupt through the bankruptcy court.

Dunn claims a leasehold interest under a lease dated August 4, 1960. This lease names as lessor "Royal Building, Inc. and Jacob & Ray Gershon," and names as lessee Charles E. Dunn. It purports to lease the restaurant premises for a term of five years, beginning September 1, 1960, at a rental of $615 per month. The lease was signed by Jacob Gershon and Charles E. Dunn. It was not signed by Cohen for Royal Building, Inc. It was not signed by Ray Gershon.

We first consider Dunn's claim against the undivided one-half interest of Royal Building, Inc. The following rules of law apply:

"Since there is, merely by reason of the existence of a cotenancy, no agency relationship between the cotenants, the courts

are agreed that one cotenant cannot ordinarily transfer or dispose of the interest of another cotenant in such manner as to be binding, unless duly authorized to do so. Nor can a cotenant, as a rule, bind his cotenants by any unauthorized attempt to alienate or encumber the entire estate or any specific part or portion thereof, or an undivided interest in any such portion. In the absence of authorization or ratification on the part of his cotenants, any dealing on the part of one cotenant in relation to the common property is a mere nullity insofar as their interests are concerned.

"On the other hand, * * * it is clear that an unauthorized act of the kind under consideration may be affirmed or ratified by the other cotenants, or they may estop themselves by their conduct from questioning its validity, in which case it becomes as binding upon them as though they had joined therein. Mere failure to object to a transaction of this kind, however, does not necessarily preclude the nonconsenting tenants from asserting their rights, and unless they have acquiesced therein in one way or another, there can be no basis for an estoppel in pais." 20 Am.Jur.2d, Cotenancy and Joint Ownership, § 95, pp. 194, 195. See also 86 C.J.S. Tenancy in Common § 113; and Goodwin v. Costello, 240 Mo.App. 656, 212 S.W.2d 804, 807–808.

There is no evidence in the record to support a finding that Jacob Gershon was authorized by Royal Building, Inc. to execute the lease of August 4, 1960, in its behalf. Therefore, we must determine whether Cohen's conduct was such that we should hold Royal Building, Inc. ratified the lease, or is estopped from questioning its validity and binding effect.

Town House, Incorporated, occupied the restaurant premises under lease dated April 1, 1948. This lease was signed by Cohen for Royal Building, Inc., by Jacob Gershon, and by Ray Gershon. In 1954, Block and Company, Realtors, took over management of the entire building. On April 22, 1955, another lease was executed with Town House, Incorporated. This lease was signed by Cohen for Royal Building, Inc., by Jacob Gershon, and by Ray Gershon. On August 23, 1957, a lease involving additional area was executed with Town House, Incorporated. This lease was signed by Cohen for Royal Building, Inc., by Jacob Gershon, and by Ray Gershon. All of these leases were signed by Dunn for Town House, Incorporated.

On August 4, 1960, Jacob Gershon signed the lease under which Dunn now claims a leasehold interest. Cohen was out of the city at the time. On August 5, 1960, Jacob Gershon wrote Cohen a letter and enclosed a copy of the lease. Cohen testified that the copy he received was not signed. On August 12, 1960, Cohen wrote Jacob Gershon a letter, suggesting changes in the lease, suggesting that Block and Company should negotiate the lease, and expressing a desire for a cancellation clause in the event the building should be sold.

On August 19, 1960, Dunn and Cohen discussed the situation. Dunn testified that Cohen objected then to the amount of the rental required by the lease dated August 4, 1960, and that Cohen wanted it prepared on the standard form used by Block and Company, but that Cohen was otherwise agreeable. Cohen testified that he advised Dunn the lease was unacceptable, that the rental should be increased, and that there should be a cancellation clause.

On August 29, 1960, Block and Company presented a lease to Dunn containing Cohen's changes. Dunn read the lease and returned it unsigned to Block and Company a few days later. Cohen testified that on September 29, 1960, he first learned that Jacob Gershon had signed the lease on August 4, 1960. On October 3, 1960, Cohen wrote to Dunn the following letter: "October 3, 1960, Mr. Charles E. Dunn, c/o Town House Restaurant, 922–24 Main Street, Kansas City, Missouri. Dear Charlie: I was surprised to learn from Mr. Jacob Gershon, your father-in-law, last Thursday, September 29, 1960, that he had

signed a lease to you for the premises at 922–24 Main Street for a period of five years, commencing September 1, 1960, with a renewal option for an additional five years. When you came to my office to discuss the lease on the premises, you gave me no indication that you already had persuaded your father-in-law to sign such a lease on the 4th day of August, 1960. I told Mr. Gershon that I thought it was wrong for him to have entered into such a lease without consulting me and without waiting until I had returned from my vacation on August 8, and that so far as the Royal Building, Inc., the owner of an undivided one-half interest in this real estate, is concerned, we do not recognize the validity of such a lease. Insofar as we are concerned, you are occupying the premises on a strictly month-to-month basis. Mr. Gershon and I have never had a dispute during all the years we have owned this property together, and I am sure he would not have signed this lease if you had not over-persuaded him. He, as well as you, knew that we had turned this building over to Block & Company for management, which included the leasing of the premises, and that all leases should have been cleared through that office. As I told you when you were here, I have no objection to entering into a lease with you for a reasonable time and with reasonable safeguards for both parties. You were told to see Mr. Allen Block about the lease, and you promised you would do so. This you have failed to do, and I now realize for the first time that your failure to see Mr. Block is because you are relying upon the instrument signed by Mr. Gershon, which the Royal Building, Inc. does not recognize as valid. I would suggest that you consult with Mr. Block and try to work out a satisfactory lease that would be agreeable to all the owners of the property. Yours very truly, Joseph Cohen."

Dunn expended about $30,000 in August and September, 1960, in preparing the restaurant for its reopening. He opened the restaurant on or about September 20, 1960. He made rental payments until the date of taking in condemnation and they were accepted.

"The Courts all concur in this, that no man can set up another's act or conduct as the ground of an estoppel, unless he has himself been misled or deceived by such act or conduct; nor can he set it up where he knew or had the same means of knowledge as to the truth * * * as the other party." Bales v. Perry, 51 Mo. 449, 453. On this record we hold that Royal Building, Inc. did not affirm or ratify the lease of August 4, 1960, and that it is not estopped from questioning its validity and binding effect. Cohen at no time indicated the lease of August 4, 1960, was acceptable to him. His objections to it were substantial. He testified that he accepted the rental payments because Dunn "kept using the building" under "the tenancy of month to month." The trial court believed his testimony. We defer to its judgment in this regard.

We next consider Dunn's claim against the undivided one-half interest of the heirs of Jacob Gershon. On August 4, 1960, Jacob Gershon and Ray Gershon, his wife, owned their one-half interest in the building as tenants by the entirety. Jacob Gershon signed the lease. Ray Gershon did not sign the lease. Ray Gershon died September 19, 1961. Jacob Gershon died March 12, 1962. Dunn asks that we apply the doctrine of "estoppel by lease." Columbian Carbon Company v. Kight, 207 Md. 203, 114 A.2d 28, 51 A.L.R.2d 1232; Annotation, 51 A.L.R.2d 1238. He contends that when Ray Gershon died, Jacob Gershon acquired, during the term of the lease, sole ownership in fee of the undivided one-half interest, which he did not have when he executed the lease; and, therefore, that his heirs are now estopped to question Dunn's leasehold interest.

We first note the distinction between "technical" estoppels [e. g. estoppels by record, deed or lease], and "equitable" estoppels [e.g. estoppels by conduct or misrepre-

sentation]. See Bigelow on Estoppel, 6th Ed., pp. 3–32.

■ "Technical" estoppels are invoked to prevent a grantor from asserting an after-acquired title or interest in land which his deed purported to convey. We permit a deed "to pass any interest subsequently acquired by the grantor if an intent to convey that interest be disclosed by the instrument." Ott v. Pickard, Mo.Sup., 237 S.W.2d 109, 111. However, in order for an instrument to operate as an estoppel against assertion of an after-acquired title, the true ownership must not be evidenced on the face of the instrument. Gibson v. Chouteau, 39 Mo. 536, 567.

■ Ray Gershon's name appears as a lessor in the lease dated August 4, 1960. The lease, by its terms, evidences and gives notice of her interest. The truth as to title appears on the face of the lease. Therefore, "technical" estoppel, estoppel by lease, may not be invoked here. Bigelow on Estoppel, supra, p. 393 et seq.

■ The true substance of appellant's contention is that Jacob Gershon, by signing the lease, misrepresented his authority to execute the lease in behalf of his wife. This contention involves a question of applying "equitable" estoppel. Jacob Gershon did sign the lease. However, we may not infer that he purported to sign it in a representative capacity. We have reviewed the record and find no evidence of misrepresentation by Jacob Gershon. The doctrine of estoppel does not apply.

■ We are of the opinion that appellant Dunn, at the date of taking in condemnation, was a tenant from month to month, and had "no such interest as entitles him to compensation." 2 Nichols on Eminent Domain, 3rd Ed., § 5.23 [4].

The judgment of the trial court is for the right parties, and it is affirmed.

All of the Judges concur.