**STATE of Missouri ex rel. STATE HIGH-WAY COMMISSION, Plaintiff,**

v.

**Mike DEMARCO, Exceptions of Estate of W. E. Reed, et al., Movants-Respondents,**

v.

**Warren DEAN, et al., Respondents-Appellants.**

**No. 8900.**

Springfield Court of Appeals.

Missouri.

Aug. 8, 1969.

Jay White, Rolla, for respondents-appellants.

James A. Cole, Jenny & Cole, Union, William A. Moffitt, Jr., St. Louis, for movants-respondents.

HOGAN, Presiding Judge.

This is a statutory proceeding to apportion and distribute an award of damages for condemnation, as provided by Section 523.053, R.S.Mo. (Cum.Supp.1967). The plaintiff Highway Commission filed condemnation proceedings in Phelps County naming the owners of the fee, to whom we shall refer as the Reeds, one Arthur Hayes, and the appellants, to whom we shall refer as the Deans, as defendants. We do not know the size of the tract which the State sought to appropriate from the Reeds—the parcel involved on this appeal is only about 500 feet square—but the commissioners awarded $78,000 as damages, without apportionment. The State, the Reeds and the Deans filed exceptions. Those exceptions are still pending, but shortly after present Section 523.053 became effective the Reeds filed a motion for distribution of the award as authorized by that statute. The substance of their motion was that none of the other defendants had any right or interest

in the award, and that as the fee owners of the tract condemned, they were entitled to the entire award. The Deans filed a responsive pleading, setting up that they were "bona fide lessees." They did not specifically plead the nature of the leasehold interest which they held, but the responsive pleading incorporated by reference the documents from which the Deans deraign their claim of interest. The case was tried to the court, which found that the Deans had no compensable interest in the property appropriated at the time of the taking in condemnation. The Deans thereupon appealed to the Supreme Court, which concluded that it lacked jurisdiction and transferred the appeal here. State ex rel. State Highway Commission v. Demarco, Mo., 434 S.W.2d 552.

It may be noted preliminarily that although the transcript is not long, and the testimony of the witnesses is not very involved, the record taken as a whole is vague and obscure in many respects. This case represents—apparently—one facet of a more inclusive proceeding in which the condemnor appropriated a substantial acreage. Both counsel and the trial court seem to have been familiar with the general condemnation action and the relation between that action and this case, but we are not, and we do not have the same mental picture of this appeal in context. Further, though the chronology of events is important in this case, there is little if any correlation between events and the dates on which they occurred. In addition, 76 exhibits of varying degrees of relevance and importance were filed here, without any particular attempt to correlate them with the appellants' theory of the case. This is not to say that the record is insufficient for us to decide the case on its merits; it is to say that in the interest of an opinion of reasonable length, we shall refrain from reciting and threshing over all the evidence and summarizing all the exhibits, however extraneous; we shall notice only those basic facts and consider those fundamental points essential to a proper disposition of the appeal. See

Bloomfield Reorganized School Dist. No. R–14 v. Stites, Mo., 336 S.W.2d 95, 97.

One issue to be considered here is whether or not the appellants were entitled to have a jury summoned to consider their claim of interest under the provisions of Section 523.053, R.S.Mo. (Cum.Supp.1967). Before the Supreme Court, the appellants attempted to assert their right to a jury trial as a constitutional issue. That court held that any constitutional question involved had been waived by failure to preserve it for review, State ex rel. State Highway Commission v. Demarco, supra, 434 S.W.2d at 554 [3], and of course such a direct ruling precludes further consideration of the appellants' right to a jury trial as a constitutional matter; the issue is simply no longer in the case.[1] In this connection, however, the appellants argue that since a party to a condemnation proceeding had under the provisions of Chapter 523, R.S.Mo. (1959) is entitled to have a jury assess his damages upon the filing of exceptions,[2] it must be inferred that a jury trial was required.

◼ Section 523.053, R.S.Mo. (Cum. Supp.1967) does not in terms require a jury trial. If we accept the respondents' view that the apportionment statute is a codification of the prior case law, then it would seem, in light of the language used in such cases as Land Clearance for Redevelopment Authority of City of St. Louis v. Zitko, Mo., 386 S.W.2d 69, 79 [15, 16], and Murphy v. Barron, 286 Mo. 390, 409–411, 228 S.W. 492, 497–498 [13, 14], that the proceeding authorized by Section 523.053 is a proceeding in the nature of an action to determine title to the realty appropriated, even though the title to real estate is not involved in the appellate jurisdictional sense. Murphy v. Barron, supra, 286 Mo.

at 409–410, 228 S.W. at 497–498 [13]. For the purposes of this opinion, however, it is unnecessary to construe Section 523.053. While the appellants did request a jury trial in writing, the trial court announced before the trial was commenced that "I am denying the request [for a jury trial]" and the appellants proceeded to trial without objection. Thus, even if the appellants had the right to a jury trial as they maintain, they waived that right by entering into trial before the court without objection. Rule 69.01(b) (4), V.A.M.R.; Section 510.190, par. 2(4), R.S.Mo. (1959); State ex rel. State Highway Commission v. Tighe, Mo., 386 S.W.2d 115, 117 [2, 3]. We therefore review the case as we would any other court-tried case, pursuant to the provisions of Rule 73.01(d), V.A.M.R. State ex rel. State Highway Commission v. Tighe, supra, 386 S.W.2d at 117. Among other things, Rule 73.01(d) requires that we defer to the findings of the trial court on conflicting evidence, and that the judgment be affirmed unless it is clearly erroneous. In re Franz' Estate, Mo., 372 S. W.2d 885, 900 [7].

◼ As indicated, the burden of the appellants' argument on the merits is that they were lessees or sublessees of the property appropriated, and as such are entitled to a share of the award. In the "argument" part of their brief, the appellants begin with the sweeping assertion that any lessee or sublessee is entitled to an apportionment of the commissioners' award in a condemnation case, stating without explaining how they calculate the period that "[c]alculating from the date exceptions were filed September 21, 1964, appellants had five months, nine days on a one year sublease with Hayes and a possible three years renewal under the terms of the original lease." We can agree with the ap-

---

1. State v. Katz Drug Company, Mo.App., 362 S.W.2d 80, 82[1]; State v. Higgins, Mo.App., 252 S.W.2d 641, 643[2]; Beck v. Kansas City Public Service Co., Mo. App., 48 S.W.2d 213, 215[1]; State ex rel. Cornelius v. McClanahan, 221 Mo. App. 399, 402, 278 S.W. 88, 89–90 [5].

2. Section 523.060, R.S.Mo. (1959), and see, e. g., State ex rel. State Highway Commission v. Mahon, Mo.App., 350 S.W.2d 111, 113 [1].

pellants' general assertion to the extent of saying that ordinarily a lessee for a term of years, or from year to year, holding under a valid devise, grant or lease is an owner of property in the constitutional sense, and is entitled to compensation for the appropriation of his interest in the property to a public use,[3] and the same rule applies to a sublessee or assignee. 2 Nichols, Eminent Domain, § 5.23, p. 57. However, it is not true to say that every person who can properly be designated a lessee or sublessee is entitled to damages upon the taking of his interest in condemnation, for there are commonly recognized leasehold interests which are not sufficient to support a claim for a share of the compensation awarded to the fee owner when the property is appropriated to a public use.[4] What we must consider is whether or not the appellants had any compensable interest in the land appropriated at the time the condemnation proceeding was instituted, not at the time exceptions were filed, Millhouse v. Drainage District No. 48 of Dunklin County, Mo. App., 304 S.W.2d 54, 58 [2] [3–8], and since the appellants trace their claim of interest from certain written instruments, we must first examine those instruments.[5]

On January 1, 1958, Mr. W. E. Reed and Mr. Arthur Hayes executed a lease. By the terms of this instrument, Mr. Hayes leased a plot of ground 500 feet square (the tract immediately in controversy) from Reed at a monthly rental of $75 for a term of five years. The lessee covenanted that:

" * * * He will not assign nor sublet this lease or any portion of said premises except with the consent of the Lessor."

It was mutually covenanted:

" * * * That the Lessee shall have the right or option to execute a new lease for one additional five (5) year term upon the expiration of this lease upon the same terms as provided herein except the rental shall be at the rate of One Hundred ($100.00) Dollars. This provision shall not be made a part of any subsequent lease."

The lease is made binding on the heirs, administrators and assigns of the lessor and the heirs, administrators and assigns of the lessee, "if assignment is permitted." In connection with this document, to which we shall refer as the base lease, it should be noted that Mr. W. E. Reed died on January 10, 1961, and that by its terms the lease determined on December 31, 1962, unless renewed.

On March 2, 1959, Hayes sublet the premises, *except* "the two central rooms adjacent to each other and located on the ground floor in the two story, remodeled building * * *" to Warren Dean for a term of one year at a monthly rental of $100. In this instrument Hayes, as sublessor, covenants as follows:

"The said Arthur Hayes further agrees that in the event of a breach of any of

3. Biddle v. Hussman, 23 Mo. 597, 599–600; City of St. Louis v. Senter Commission Co., 233 Mo.App. 804, 809, 108 S.W.2d 1070, 1072 [1]; 2 Nichols, Eminent Domain, § 5.23, pp. 55–61 (Rev. 3rd ed. 1963); 27 Am.Jur.2d Eminent Domain, § 250, pp. 21–26.

4. Land Clearance for Redevelopment Authority of Kansas City v. Dunn, Mo., 416 S.W.2d 948, 952[8]; 2 Nichols, Eminent Domain, §§ 5.23(4), 5.23(5), 5.23(6), pp. 71–73; Anno., 152 A.L.R. 307, 311–312 § IIb (1944).

5. We should note that the valuation of the appellants' interest is not involved on this appeal; at the trial court's suggestion, the hearing was limited to a determination whether or not both the Reeds and the Deans had an interest in the award, or whether, as the Reeds contended, they owned it all. We have also noted the respondents' assertion that there is no showing whatever that Mrs. Dean had an interest in the award, because she was not a signatory to any of the documents introduced in evidence. In the view we take of this appeal, it is unnecessary to decide whether or not Mrs. Dean was an "owner" of the property taken simply because of her relationship to Mr. Dean.

the terms of the original lease between W. E. Reed, the owner of the premises described herein, and the said Arthur Hayes, that he, Arthur Hayes, will protect the Lessee herein, Warren Dean, by taking whatever legal action or means necessary to enforce the terms of said lease, and in the event the said Arthur Hayes should fail to take the necessary action to enforce the terms of said original lease, the said Warren Dean shall have the right to do every act he deems necessary to enforce said original lease, and the said Arthur Hayes hereby assigns to Warren Dean all his right, title and interest in said lease for that purpose.

"All rights and privileges heretofore granted to the said Arthur Hayes by the terms of the original lease between W. E. Reed and the said Arthur Hayes are hereby assigned to the Lessee herein, Warren Dean."

and further:

"Warren Dean, the Lessee herein, shall have the right or option to renew his lease each year on the same terms and conditions until the expiration of the original lease on December 31, 1962, and for the period covered by any extension under the option provided in said original lease. In the event the said Arthur Hayes should fail to exercise his rights to the option in the original lease, extending said original lease for an additional five year term after December 31, 1962, the said Warren Dean is hereby assigned the right and given the privilege to exercise said option on behalf of the said Arthur Hayes."

This sublease also recites that the sublessor has "first obtained the written approval and consent to assignment of W. E. Reed, the original Lessor, to sub-lease the premises hereinafter described reserving to himself a portion of the two story building on said premises."

In this connection, a third document, a typewritten "Consent to Assignment of Lease," was introduced in evidence. This instrument recites that "the above described lessor [W. E. Reed] hereby grants written permission to Arthur Hayes, Lessee, to lease all or any part of the premises described in said lease to Warren Dean, Rolla, Missouri on a term from year to year until the expiration of the original lease described above." This document purports to be signed "W. E. Reed." The respondents—the Reeds—had evidence from a Mr. George G. Swett, an "examiner of questioned documents," that the signature on this "consent" was not that of Mr. W. E. Reed. We need not go into Mr. Swett's testimony in detail. While it does not support the respondents' argument that the typewritten "consent" was a deliberate fabrication—a "forgery," as counsel for respondents called it—it shows rather convincingly that the signature on the "consent" is not that of Mr. W. E. Reed. The appellants contented themselves in the trial court with an attempt to show that prior to his death in 1961, Mr. W. E. Reed had "adopted and ratified" the false signature by giving the typewritten "consent" to Mr. Hayes' sister, saying " * * * Here it was, but it wasn't really necessary; that he was interested in getting his rent, and as long as Mr. Hayes paid him the rent, that was what he was interested in." Mr. Hayes' sister expanded on this by saying that Mr. Reed meant that "it [the consent] wasn't really necessary, that he didn't care who was in the property, as long as he got his money, his rent money."

The appellants, who as we say base their claim of interest on the written lease and sublease, strenuously argue either that Mr. W. E. Reed orally consented to the sublease, or that he ratified the transaction, or that he adopted the signature on the "consent," or that by accepting rent from appellant Warren Dean, Reed was estopped to deny the sublessee's tenancy. The appellants stress, among other things, their evidence that Mr. Dean entered on the premises and made improvements (removed before the condemnation), including three

highly visible signs saying "Dean's Government Surplus"; their evidence that Mr. W. E. Reed was on the premises and saw these signs, and must have been aware of Dean's tenancy; their evidence that Mr. Reed delivered the "consent" form to Mrs. Miller, Mr. Hayes' sister, with the remark that "it wasn't really necessary," and certain other facts and circumstances (some of which they overstate) as proof that Mr. W. E. Reed consented to the arrangement between Mr. Hayes and Mr. Dean, however that legal relationship might be precisely characterized.

We need not pursue this point. It is sufficient to say that the trial court could have believed that Mr. W. E. Reed was never aware of the terms of the sublease, and never gave his written consent either orally or in writing, but assuming that in some way not clearly demonstrated Mr. W. E. Reed did consent orally or by ratification or otherwise to the instrument denominated a "sublease," it must be remembered that the base lease and the sublease both determined on December 31, 1962. We must determine what the status of Hayes and Dean was after that date, even if we assume, with the utmost reserve, that the sublease was executed with the lessor's consent and permission.

■■■■ The base lease contains a provision that it may be renewed, but we do not agree with the assumption made by appellants' trial counsel that " * * * none of the lease, none of the provisions of the lease require any notice of any kind, other than the continuation to pay rent." Specifically, the covenant in the base lease gives the lessee " * * * the right or option *to execute a new lease for one additional five (5) year term* * * * upon the same

terms * * * except the rental shall be at the rate of One Hundred ($100.00) Dollars. * * *" (Our emphasis.) We construe this as a provision for renewal, rather than a mere provision for extension. The technical distinction between the two is that a provision for renewal grants the privilege of creating a new tenancy upon the expiration of the original term, while if the provision is for an extension, no new tenancy is created, but instead the provision of itself and alone continues the tenancy for the additional term upon the exercise of the option conferred. A lease with a provision for extension is regarded as a present demise for the full term to which the lease may be extended upon the exercise of the lessee's option; a lease with a provision for renewal is regarded as a demise for the original term with a privilege for a new lease for an extended term.[6] Our courts generally have had a tendency to disregard the distinction between a "renewal" and an "extension," but if the language of the lease specifically calls for the execution of a new lease, that requirement is enforced. Bussen v. Del Commune, supra, 239 Mo.App. at 873, 199 S.W.2d at 22 [17]; Stout v. North, 211 Mo. App. 245, 249–250, 242 S.W. 119, 121 [1]. The immediate significance of the distinction is that unless some particular, specific kind of notice is required by the lease, an option for an extension may be exercised by remaining in possession and continuing to pay rent; upon acceptance of the rent by the landlord, an extension is effected.[7] If on the other hand the option is, properly speaking, an option for renewal, then it must be exercised according to its terms; it cannot be exercised in part and rejected in part, and if the performance of some act is required of the lessee, then perform-

---

6. American Press Co. v. City of St. Louis, 314 Mo. 288, 301–302, 284 S.W. 482, 486 [1]; Bussen v. Del Commune, 239 Mo. App. 859, 873, 199 S.W.2d 13, 22 [15, 16]; Medicus v. Altman, 199 Mo.App. 466, 468, 203 S.W. 637, 638 [2]; 2 Tiffany, Landlord and Tenant, § 218, pp. 1514–1518 (1912).

7. Snowden v. Dawdy, Mo.App., 343 S.W.2d 197, 199 [1]; Medicus v. Altman, supra, 199 Mo.App. at 468, 203 S.W. at 638 [1]; Gerhart Realty Co. v. Brecht, 109 Mo.App. 25, 29–30, 84 S.W. 216, 217.

ance must at least be tendered.[8] Moreover, a general covenant for renewal is indivisible and must be exercised in its entirety; it does not confer an option to renew as to only part of the premises, Stout v. North, supra, 211 Mo.App. at 253, 242 S.W. at 123 [4]; 32 Am.Jur. Landlord and Tenant, § 954, p. 804, and in any event the privilege of renewal must be exercised before the expiration of the original lease.[9]

Again with some reserve, we have assumed for the purposes of this opinion that Mr. Hayes' assignment of his right to renew the base lease was effective as such, but given that premise, the record is barren of any indication that he ever attempted to exercise the option to renew the base lease according to its terms. In fact, it is by no means clear that he even remained on the premises, in the two rooms he had reserved, up to the time the condemnation action was begun in July, 1964. Mr. Dean's payments were made to a Mr. M. C. (Red) Miller, who was Mr. Hayes' brother-in-law. Mr. Miller testified that " * * * *all the time that Mr. Hayes was there* * * * he made the payments himself to Mr. [W. E.] Reed." (Our emphasis.) Mr. Miller was asked if he, Miller, made the payments and collected the rent *after* Mr. Hayes left the premises, and he answered affirmatively. There is other evidence which indicates, if it does not prove, that Hayes left the premises completely after Dean took possession. In candor, we simply do not know what became of Hayes, but there is no affirmative indication that he attempted to renew his lease in accordance with the terms of the option for renewal.

The same is true of Mr. Dean. The appellants introduced a series of letters in evidence, received as exhibits "D" through "K," upon which they rely to show that the base lease was renewed. The first of these letters is dated January 14, 1960. Mr. Dean by this letter advised Mr. Red Miller, the sublessor's agent, that "we want to renew it [the sublease] for a one year period." On March 4, 1961, Mr. Dean advised Mr. Hayes, by letter, " * * * that we wish to renew for one year ending February 28, 1961 [sic] our option on the W. E. Reed property * * *." On December 22, 1961, Mr. Smith, as "general manager" of Dean's Government Surplus, advised Mr. Miller that Dean's Government Surplus "desire[s] to exercise our option for at least the next year." On December 14, 1962, Mr. Smith wrote Mrs. Miller "[c]oncerning Arthur Hayes, Lessor and Warren E. Dean, Lessee * * * [w]e wish to exercise our option to continue this lease for a period of one (1) year." On December 12, 1963, Mr. Smith advised Mr. Miller that it was " * * * our intention to exercise our option * * * for one more year." On November 17, 1964, Mr. Smith advised Mr. Hayes, at Miller's Auto Salvage, that "we wish to exercise our option * * * for a period of one year * * * ending December 31, 1965." On that same date Dean's Government Surplus addressed a letter to "Trustees of Estate of W. E. Reed" [sic] stating that "This is to advise that we wish to exercise our option to maintain our lease dated 2 March 1959 on property * * * leased between the W. E. Reed Estate and Arthur Hays and transposed [sic] from Arthur Hays to W. E. Dean * * *." The letter continued: "In the event Mr. Arthur Hays does not remit on lease as specified, we wish to exercise our option to remit in his stead." A telegram, which was the same in substance as the letter of November 17, 1964, to the "trustees" of the W. E. Reed estate, was sent by Mr. Dean to those "trustees" on the same day, November 17, 1964. These last three communications, of

---

8. Hudson v. Price, Mo.App., 273 S.W.2d 518, 522 [3]; Bussen v. Del Commune, supra, 239 Mo.App. at 874, 199 S.W.2d at 22–23 [19]; Stout v. North, supra, 211 Mo.App. at 253, 242 S.W. at 122.

9. Bussen v. Del Commune, supra, 239 Mo. App. at 873–874, 199 S.W.2d at 22 [18]; Stout v. North, supra, 211 Mo.App. at 254, 242 S.W. at 123; Rutledge & Taylor Coal Co. v. Mermod Jaccard & King Jewelry Co., 209 Mo.App. 292, 300, 237 S.W. 849, 851.

course, were sent some four months after the condemnation action was begun, and nearly two years after the base lease had expired, and with it the option to renew. None of the letters can fairly be characterized as an attempt to exercise the option for renewal found in the base lease according to its terms, viz., (a) by offering to execute a new lease; (b) for a period of five years; (c) on all of the premises originally demised to Hayes. Mr. Dean, in fact, testified that he never at any time offered to execute a new lease for five years, from 1962 to 1967, with the Reeds. The only conclusion we can draw from the record is that the base lease determined on December 31, 1962, without renewal, and with it the appellants' rights under the base lease, whether the appellants were assignees or sublessees or conceivably tenants through surrender by operation of law.

■ We have all along borne in mind that the relation of landlord and tenant may arise informally, that is, without a writing, and that if, as the record suggests, Mr. Hayes abandoned the premises at some time after Mr. Dean took possession of all but the "two central rooms," his surrender or abandonment of the premises would not necessarily operate to extinguish Mr. Dean's interest. I American Law of Property, § 3.62, p. 314. One of the appellants' arguments is that even if Mr. W. E. Reed never consented to the sublease, or assignment, of the base lease, they nevertheless continued in possession and continued to pay rent and had their rental payments accepted by someone on behalf of Mr. W.

E. Reed's successors and therefore *some kind* of tenancy must have resulted, either by estoppel, or through ratification or some similar principle. We are convinced that if it could be said that Mr. Dean became a tenant holding over by parol, his tenancy was a tenancy from month to month, in which case he would have no compensable interest in the award. Land Clearance for Redevelopment Authority of Kansas City v. Dunn, supra, 416 S.W.2d at 952[8]; 2 Nichols, Eminent Domain, § 5.23(4), p. 72. Be that as it may, it must be remembered that the mere act of holding over after the expiration of a written lease, that is, continuing in possession, does not of itself create any character of tenancy; it merely gives the landlord the option or election to treat the person holding over as a tenant for a new term, or evict him, and before any type of tenancy can be implied from holding over it must appear that the landlord has expressly or impliedly consented.[10]

■ It may be granted that the acceptance of rent by the landlord usually indicates his consent to a tenant's holding over, and that in some instances the silence and inactivity of the landlord alone may be taken as indicating his acquiescence.[11] Nevertheless, the question whether or not the landlord has expressly or impliedly consented to the tenant's holding over is a question of fact,[12] and upon the evidence presented in this case it cannot confidently be said that the landlord's consent, either express or implied, is shown. In the first place, the transcript does not show that Mr. Dean ever had any direct dealing with

10. Grant v. White, 42 Mo. 285, 289; Millhouse v. Drainage District No. 48 of Dunklin County, supra, 304 S.W.2d at 59 [18, 19]; Mastin v. Metzinger, 99 Mo.App. 613, 616, 74 S.W. 431; I American Law of Property, § 3.33, p. 238; Anno., 55 A.L.R. 286 (1928).

11. Snowden v. Dawdy, supra, 343 S.W.2d at 199[1] (involving an option to extend the lease); I American Law of

Property, § 3.33, p. 238; Anno., 45 A.L.R.2d 827, 831–835, § 3(a) (1956); Anno., 64 A.L.R. 309–312, 313–315, §§ I, IIa, III (1929).

12. Grant v. White, supra, 42 Mo. at 290; Solomon v. Rogers, 210 Ala. 423, 98 So. 370, 371 [2, 3]; Auto Parts, Inc. v. Jack Smith Beverages Inc., 309 Mich. 735, 16 N.W.2d 141, 144; Anno., supra, 45 A.L.R.2d at 835, § 3(b).

any of Mr. W. E. Reed's successors in interest until after the condemnation proceeding was instituted. In the second place, Mr. Dean did not pay rent to Mr. W. E. Reed's successors; he paid his rent to Mr. Hayes' brother-in-law, Mr. Miller. Mrs. Miller, Mr. Hayes' sister, deposited Mr. Dean's check to her account, "for convenience," and then sent her check to the Reeds. The records of Mr. W. E. Reed's personal bank account indicate that he received a monthly rental payment, in the name "Millers," "Miller Auto," or "Miller Auto Salvage," up to the time he died, and that the deposits were thereafter credited to "M. C. Reed," who was identified as Mrs. Maude C. Reed, Mr. W. E. Reed's widow. A Mrs. Kohring, who took care of Mr. W. E. Reed's personal bank account, testified that she had never received any rental payment directly from Mr. Dean. Mr. Dean testified that he never made any tender of rent to Mr. W. E. Reed or his family until after Mr. Reed died, and that then his check was returned. Mr. Dean had no cancelled check indicating payment to the Reeds; up to the time the condemnation proceeding was instituted, the rent checks were " * * * made out to either Miller Auto Salvage, or Red Miller * *." It is sometimes said that the acceptance of rent by the owner is prima facie proof that the occupant is his tenant, 51C C.J.S. Landlord & Tenant § 11, p. 45, but certainly the acceptance of rent from another—here Mrs. Miller, or "Miller's Auto"—would not indicate consent to Mr. Dean's tenancy,[13] and as we say, there is no record showing that Mr. W. E. Reed's successors

in interest even knew of Mr. Dean's occupancy of the premises until after the condemnation proceeding was instituted.

There is another and further weakness in the appellants' argument that they were tenants by holding over, if nothing else. It must be remembered that Mr. W. E. Reed died before the base lease determined, and that the base lease determined without effective renewal. Mr. Dean was then dealing with Mr. W. E. Reed's successors' interest; their collective assent to his holding over was necessary. A single cotenant's attempt to lease the entire premises does not bind the other cotenants unless they have in some way ratified his act, or have estopped themselves from questioning its validity.[14] There is no showing that the defendants Reed shared in the rental payments made by Mr. Dean; there is nothing of record to show that they knew of Mr. W. E. Reed's dealing with Mr. Dean, and nothing to show that the rental payments made by Mrs. Miller were accepted on behalf of Mr. W. E. Reed's estate. In short, there is no fact or circumstance in the evidence which would indicate an act of ratification on the part of Mr. Reed's successors, or tend to estop them from questioning the validity of appellants' claim.

For the reasons indicated, we conclude that the appellants have no compensable interest in the commissioners' award, and the judgment is affirmed.

STONE and TITUS, JJ., concur.

13. Scott v. H. G. Smithy Co., Mun.App. D.C., 53 A.2d 45, 46 [1]; Doyle v. Mullaney, 89 Mont. 20, 295 P. 760, 762 [5]; 1 Tiffany, Landlord and Tenant, § 18, p. 169; 51C C.J.S. Landlord & Tenant § 11, p. 45.

14. Land Clearance for Redevelopment Authority of Kansas City v. Dunn, supra,

416 S.W.2d at 949–950; Goodwin v. Costello, 240 Mo.App. 656, 661, 212 S.W. 2d 804, 807–808 [1]; II American Law of Property § 6.11, p. 49; 20 Am.Jur.2d Cotenancy and Joint Ownership, § 95, pp. 194–195.